## C. & G. COOPER v. C. H. CONDON, *et al.*

1. JUDGMENT UPON DEFAULT; *Immaterial Error.* Where an application of the plaintiff is pending in a district court of the state, to remove the action into the United States circuit court, and the hearing of the application is set by the court for a particular day in the future, it is error for the court to allow the defendant, before that day arrives, and in the absence of the plaintiff and his attorneys, and without any notice to them, to take judgment against the plaintiff, although upon the pleadings, the defendant is entitled to just such a judgment as he obtained. But where said application is defective, and ought to be overruled, and is eventually overruled, and where the plaintiff, who is in default for want of a reply, afterward moves the court to vacate said judgment, but does not offer to file a reply, and makes no such showing as would entitle him to file a reply, and where the judgment is correct upon the pleadings in the absence of a reply, and the court overrules the motion to vacate the judgment, *held,* that the error of the court in rendering the judgment is now immaterial, and therefore the judgment will not be disturbed.

2. REMOVAL OF ACTION, *from State to United States Court; Affidavit for Removal.* Where an application, under the act of congress of May 2d, 1867, is made by the plaintiff, to remove an action from a district court of the state, to the United States circuit court, and the plaintiff does not personally "make and file" any affidavit, nor is there any reason given why he does not do so, but his attorney and agent makes and files the affidavit to sustain said application, and states therein that the attorney and agent, and not the plaintiff, "has reason to and does believe" that the plaintiff cannot obtain justice in such state court, *held,* that the application is not founded upon a sufficient affidavit. The plaintiff himself should make the affidavit.

3. PRIORITY OF LIENS; *Surrender of Secured Notes; Subsequent Mortgage.* M. & K. own certain real estate and give a trust-deed therefor to D. to secure two notes held by C. & Co. against M. &. K. Afterward, M. & K. sell and convey said premises to W., and C. & Co. then surrender said notes to W., and take in their stead three notes from W. & E. to themselves, and then take a mortgage on said premises from W. to themselves, to secure said last-mentioned notes: *Held,* that C. & Co.'s lien on said premises, held under said trust-deed, was surrendered by them when they surrendered said notes and took the new notes and mortgage, and that the lien of third persons, obtained on said premises after the execution of said trust-deed but before the execution of said mortgage, are prior to the lien of said C. & Co. on said premises.

### Error from Labette District Court.

THE district court, at the March Term 1874, rendered judgment in favor of *Condon* and others, defendants in error, in certain foreclosure proceedings involving the rights of plaintiffs in error and defendants in error, where the principal questions between the parties was as to the priority of their respective liens on the same real property. The lien of Cooper & Co. was adjudged to be subsequent to the liens of *Condon* and two others of the defendants in error, and from such decision *Cooper & Co.* appeal. Other questions, and all the facts necessary to an understanding of the decision here, are stated in the opinion.

*Thurston & Keplinger*, for plaintiffs in error.

*F. A. Bettis*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by C. & G. Cooper & Co., against C. M. Condon and various other persons, for the purpose of recovering a personal judgment against D. S. Wood and B. Edwards, for the amount of three promissory notes given by Wood and Edwards to the plaintiffs, and for the purpose of foreclosing a mortgage on certain real estate given by Wood and wife to the plaintiffs to secure the payment of said notes, and of having their (the plaintiffs') lien on said real estate declared prior to Condon's lien, and to the liens of all the other defendants. The action was commenced in the district court of Labette county, on August 27th 1873. On November 7th following, the plaintiffs filed in said court a petition, affidavit, and a paper in the form of a bond, for the purpose of removing the case from the district court of Labette county to the United States circuit court. The application was informal and insufficient, for reasons not necessary now to state. Even the plaintiffs themselves seem to have treated the application as insufficient; for afterward they filed a supplemental petition in the case, changing very

much their original cause of action, making two new parties, asked for and obtained a temporary injunction against one of these new parties, made motions in the case with regard to a certain fund which had just been created, filed a reply to an answer of one of said new parties, and on March 7th, 1874, filed a new affidavit and a new bond for the removal of the case to the United States circuit court. The hearing of the application for said removal was then postponed until the 20th of said March. Before that day, and on the 9th of said March, the defendant Condon took judgment against the plaintiffs in their absence, and without any notice to them or their attorneys. Of course, the court below erred in permitting Condon to do this; and it now remains to be seen whether the error was material and substantial. Said judgment in effect was, that Condon's lien on said real estate was prior to that of the plaintiffs. On March 20th said application for removal was overruled, and we think rightly so. There were several irregularities in the application. For instance, the plaintiffs did not "make and file" the kind of affidavit required by law. They made the application under the act of Congress of May 2d 1867; (14 U. S. Stat. at Large, 559.) That act authorizes the removal of a case by the plaintiff from a state court into the United States circuit court only where "*he* will make and file, in such state court, an affidavit stating that *he* has reason to and does believe that, from prejudice or local interest, *he* will not be able to obtain justice in such state court." In the present case the affidavit was made and filed by one L. W. K., who says in his affidavit that he is "the attorney and agent of the plaintiffs;" *that he himself*, (not the plaintiffs, nor either of them,) "has reason to and does believe that from prejudice and local influence the said plaintiffs will not be able to obtain justice in the state court." He does not state, nor is it anywhere shown, why the plaintiffs, or some one of them, did not make the affidavit; nor is it shown whether *they* have any reason to believe or do believe that they could not obtain justice in such state court. The affidavit shows that it is the attorney and agent

of the plaintiffs who has reason to and does believe this. There is no authority given in the statute for a plaintiff to. swear by his attorney or agent; nor is there any authority given for his attorney or agent to "make and file" the affidavit. Nor under the statute is the attorney's or agent's belief material. We do not know that there ever has been any direct adjudication upon this exact question now under consideration by any court of last resort. It was once however decided by Judges Dillon and Dundy of the United States circuit court, that the plaintiff's attorney could not make the affidavit. (*Sands v. Smith,* 1 Dillon, 298, note. See also, *Dodge v. N. W. U. Packet Co.,* 13 Minn. 458.) We do not think that the affidavit in this case was sufficient. And we do not think that the state courts are bound to resort to extraordinarily liberal construction for the purpose of ousting themselves of the jurisdiction of cases.

After said application for removal was overruled, the plaintiffs moved the court to vacate and set aside the judgment rendered on March 9th in favor of Condon. This motion was overruled on April 4th. Said judgment, as we have already stated, was merely that Condon's lien on the premises in controversy was prior to the plaintiffs' lien. No other or different judgment could have been rendered upon the pleadings in the case. Condon set up in his answer new matter, showing that his lien was prior to that of the plaintiffs; and the plaintiffs did not file any reply thereto, controverting the allegations of said answer. Hence the answer setting up new matter must be taken as true. (Civil Code, § 128.) And hence, if the plaintiffs' motion had been sustained, and the judgment set aside and vacated, the court would have been bound to again render the same judgment upon the pleadings, unless the plaintiffs could have got leave to file a reply. The plaintiffs were in default for want of a reply when the judgment was rendered, and they gave no reason to the court for their default, except that they had thought that they had filed a reply. They did not, when they made their motion, nor at any other time, offer to file a

reply, or ask leave of the court to file a reply. They stated that they had a defense to Condon's answer, and that the answer was a sham; but they did not state what their defense was, nor why nor how Condon's answer was a sham. They did not deny the truth of the facts alleged in the answer; and a great many of them were unquestionably true. If said judgment had never been rendered; if the application of the plaintiffs had been made for leave to file a reply, instead of to vacate said judgment; and if they had made no further or better showing than they did on this application, the court would not have erred in refusing to grant them leave to file a reply, or at most it would not have committed an error sufficient to authorize a reversal of its rulings. When the plaintiffs moved to set aside said judgment, they should have shown what their defense to said answer was, what portions (if any) of the answer they controverted, why they were in default, and should have offered to file a reply upon the condition that the judgment were set aside. For, as the pleadings then were, if the court had granted their motion to vacate the judgment, the court would then immediately have rendered the same judgment upon the pleadings. On the same day that this motion was overruled, (but whether before, or after, is not shown,) the action as between the plaintiffs and the other defendants was tried. And on this trial it was shown that, even if the plaintiffs had filed a reply, and tried their case as between themselves and Condon, the same judgment should have been rendered. In any manner in which we may view the case, we do not think that the error of the district court in rendering the Condon judgment at the time it did was or is now such a material error as will require a reversal of the judgment. On the said trial between the plaintiffs and the other defendants the plaintiffs obtained the personal judgment against Wood and Edwards which they prayed for in their petition. They also obtained judgment against all the defendants, except Condon, Doty, and Avise & Co., that their lien was the prior lien on the premises. They in fact obtained everything they asked

for, except that the court rendered judgment that the liens of Condon, Doty, and Avise & Co. were prior to theirs, and of this last ruling they now complain.

The facts of the case were substantially as follows: Originally Macon, Krell and Conwell owned Block No. 13 in Oswego, Labette county. On January 10th 1870, Macon and Krell gave to Cooper & Co. their two promissory notes, for $740.25 and $775.50, due in six and nine months, respectively. On March 1st 1870, Macon and Krell executed a trust-deed for said premises to one C. F. Drake, for the purpose of securing the payment of *said notes*. The trust-deed does not purport to secure *the debt* evidenced by the notes. On January 10th 1871, Macon, Krell, and Conwell mortgaged said property to Condon to secure the payment of three promissory notes held by Condon against themselves for the aggregate amount of $1809.41. On March 14th 1871, Macon and Krell mortgaged said property to Emmert Doty to secure the payment of a certain note for $350 held by Doty against themselves. Afterward, probably about December 26th 1871, Macon, Krell, and Conwell sold and conveyed said property to David S. Wood, and Cooper & Co. surrendered to Wood the said notes of Macon and Krell to themselves, and took in their stead three other notes executed by Wood and one B. Edwards to themselves, dated December 26th 1871, one for $300, and the other two each for $713.63, and due in substantially eight, twelve and eighteen months; and Wood and wife executed a mortgage on said property to Cooper & Co. dated December 26th 1871, acknowledged April 27th 1872, and recorded August 27th 1873, "to secure the payment of the sum of $1727.27," * * * "according to the terms of" said three promissory notes. On February 3d 1872, Wood mortgaged said property to Avise & Co. to secure the payment of a debt evidenced by a certain note held by Avise & Co. against Wood. Said mortgage was recorded February 17th 1872. It is unnecessary for us to mention the claims of the other defendants; for, as against them, the court found and ren-

dered judgment in favor of Cooper & Co.   We think that the judgment of the court below, that the liens of Condon, Doty, and Avise & Co. are prior to that of Cooper & Co. is correct.   The only ground upon which Cooper & Co. claim that their lien is prior to those of Condon, Doty, and Avise & Co., is, that they have a right to date the origin of their lien back to the execution of the trust-deed from Macon and Krell to Drake, which is prior to the existence of all the other liens.   But, as we have said before, that trust-deed was executed merely to secure the payment of two certain promissory notes, and Cooper & Co. had no possible interest in said notes when they commenced this suit.   They had surrendered them long before the commencement of this action. The notes were probably canceled and extinguished when they were surrendered; but if not, still the plaintiffs had no interest in them.   The trust-deed was merely an incident to the notes, and followed them.   Whoever at any time owned the notes, owned the trust-deed; and if the notes were at any time extinguished, the trust-deed was also and necessarily extinguished.   We suppose that where a mortgage is given to secure the payment of a particular debt, the mortgage is not exhausted until the debt is paid or canceled, although the debt may in the meantime be evidenced by several different promissory notes.   In fact, wherever a mortgage is given to secure the performance of any particular act, the mortgage will not be exhausted until that particular act is performed, or until the performance thereof is excused by some subsequent transaction.   But that is not this case.   It was not *the debt*, aside from *the notes*, that was secured by said trust-deed; but it was merely the debt as evidenced by said promissory notes that was secured.   The intention of the parties must always govern in transactions of this kind; and evidently, the intention of the parties, from the language of the trust-deed, was merely to secure those notes; and then, afterward it was clearly the intention of the parties to divest Cooper & Co. of all property or interest in the notes.   And clearly, when Cooper & Co. parted with their interest in the

notes, they parted with the auxiliary security connected with the notes. The lien of the trust-deed followed the notes, and did not remain with Cooper & Co.

The judgment of the court below must be affirmed.

All the Justices concurring.