60  397
67  65

THE TOPEKA CAPITAL COMPANY, *a Corporation, et al.,*
v. E. B. MERRIAM.

No. 10959.

1. LIMITATION OF ACTIONS— *Payment of Interest.*  The payment of interest upon a debt evidenced by a promissory note starts the statute of limitations afresh, and the written indorsement of the interest payment upon the note is not essential.

2. ———— *Indorsement of Payment Immaterial.*  It is not the indorsement of a credit upon the note which revives liability ; but an actual payment thereon made and received as such takes the case out of the operation of the statute.

3. PROMISSORY NOTE— *Preexisting Debt.*  The general rule is that a promissory note made by the debtor does not discharge a pre-

existing debt for which it is given, unless it be the express agreement of the parties.

4. ———— *Preexisting Debt—Intent of Parties.* Whether the giving of notes for an existing indebtedness shall be regarded as absolute payment, or treated as additional evidence of the original debt which shall continue in force, is within the control of the parties; and the effect of the transaction is to be determined by their intention and agreement.

5. ———— *Evidence Sufficient.* The evidence examined and held to be sufficient to sustain the findings of the court.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed April 8, 1899. Affirmed.

*Keeler & Hite*, for plaintiffs in error.

*A. Bergen*, and *J. F. Switzer*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On March 14, 1887, J. K. Hudson and Mary W. Hudson executed and delivered a promissory note to C. W. Ament for $5500, due in forty-five days after date, with interest from date at ten per cent. per annum, and at the same time, and to secure the payment of this indebtedness, they executed a chattel mortgage on the *Daily Capital* newspaper plant. This action was brought to recover the indebtedness and to enforce the lien of the chattel mortgage. Shortly after the execution of the note, Ament transferred it and the mortgage to the First National Bank of Topeka, where they were held as collateral security for a debt which he owed the bank. The indebtedness of Ament to the bank was in the form of notes, which J. K. Hudson signed as surety. As the interest accrued on the $5500 note given by Hudson to Ament, Hudson paid the same to the bank, and it applied these payments on the Ament debt to the bank. It was agreed among all the interested

parties that such payment should be a liquidation and discharge of the interest due on the $5500 note held by the bank as collateral. Payments were made by Ament from time to time on his indebtedness to the bank until it was reduced to $2500, and during all that time Hudson continued to sign the renewal notes as surety for Ament. Afterward, under an arrangement between Hudson and Ament, Hudson was accepted by the bank as principal debtor, with Ament as surety, but the bank still held the $5500 note and mortgage as collateral for the debt. Ament, desiring to be relieved from the debt to the bank and to realize on his interest in the $5500 note and mortgage, made an arrangement with the bank and Hudson by which it was accomplished. Hudson and Dell Keizer executed their note to the bank for the full amount of $5500, it being agreed that the original $5500 note and mortgage should be held by the bank as collateral. This transaction occurred in May, 1892, but it was not intended by the parties that it should be treated or amount to a payment of the original $5500 note and mortgage.

In September, 1892, the First National Bank not desiring to carry the indebtedness longer for Hudson, it was transferred to the Northfield National Bank, of Northfield, Vt., and a note for $5500 was executed by Hudson and Keizer to the bank, and the original $5500 note, as well as the mortgage, was transferred to it and held as additional evidence and security for the indebtedness. At that time all the parties interested treated the original note and mortgage by Hudson to Ament as a valid and subsisting indebtedness and a first lien on the newspaper plant, and it was their intention that it should so continue. Renewals of the Hudson and Keizer note were made,

and interest on the indebtedness paid to the bank semiannually.

Prior to the commencement of this action E. B. Merriam bought the claim from the Northfield National Bank, and the note and mortgage were transferred to him. In June, 1890, the Topeka Capital Company was organized, and a bill of sale of the newspaper plant was made by Hudson to that company, which contained a stipulation that the property was free from all incumbrances. A few shares of the stock were sold, but Hudson retained the greater part of the same and a controlling interest in the company, which continued in the possession of the property until it was turned over to John R. Mulvane, mortgagee, in November, 1895. During all this time the principal officers of the company recognized the validity of the mortgage in question. Other mortgages were given, and in this proceeding Mulvane, who had acquired several mortgages on the plant, set up the defense that Merriam's action was barred by the five years' statute of limitations. He further answered alleging payment and the cancelation of the mortgage, and claiming that his liens were prior and superior to that of the plaintiff. The Topeka Capital Company answered that it purchased the mortgaged property from Hudson in June, 1890, and had been in the possession of the property since that time, claiming to be its owner. It also set up the five years' statute of limitations, and averred the payment of the debt and the cancelation of the mortgage.

There was but little dispute in the testimony, and what there was has been settled by the findings of the trial court, based, as they appear to be, on sufficient evidence. It was found by the court that the debt had never been paid or discharged, that the mortgage

had never been canceled or satisfied, and that it constituted a first and valid lien on the property described therein.   The Hudsons made no controversy as to the validity of the note and mortgage, and judgment for the amount of the debt was taken against them without contest.   The holders of the subsequent mortgages and the Topeka Capital Company still insist that the debt was barred by the five years' statute of limitations, and that the mortgage was therefore not enforceable.   The debt was not paid within five years after it became due, nor was any indorsement of the payment of interest placed on it during that time.   It appears that on September 7, 1892, an indorsement was made on the note that interest had been paid in full up to that date, and there is a subsequent indorsement that the interest was paid in full up to March 7, 1895.   These indorsements appear to have been made when the note and mortgage were transferred, and in both instances, as will be seen, it was later than the five-year period.   According to the testimony, however, interest was paid from time to time in short periods from the time it was executed until shortly before the present action was brought.   While the note and mortgage were held by Ament and by the First National Bank of Topeka interest payments were made by the Hudsons in thirty- and ninety-day periods, and after they were transferred to the Northfield National Bank semiannual payments of interest were made.

A payment of interest is regarded as an acknowledgment of the debt, which will start the statute of limitations afresh, and a written indorsement of such payment upon the instrument is not required. (Gen. Stat. 1897, ch. 95, § 18; Gen. Stat. 1889, ¶ 4101.) It is not the indorsement of a credit upon the note which revives the liability, but it is rather an actual

payment made and received as such which takes the case out of the operation of the statute. An indorsement on the note is only evidence of the act of payment, a fact which may be otherwise shown. In this case, other evidence of such payments was received, and that they were made and accepted as interest upon the debt in suit was the understanding and agreement of all who then had any interest in the debt or mortgage securing it.

Nor are we able to sustain the claim that the debt was paid and satisfied by the execution of other promissory notes. Of course, if the debt was paid and canceled the mortgage was necessarily extinguished, but " where a mortgage is given to secure the payment of a particular debt the mortgage is not exhausted until the debt is paid or canceled, although the debt may in the meantime be evidenced by several different promissory notes." (*Cooper v. Condon*, 15 Kan. 578.)

Assuming that the mortgage in question was given not to secure a debt apart from the note, but rather the debt as evidenced by the note in suit, we still have the question whether the giving of other notes should be treated as a payment of the original note as between the contesting parties. The common-law rule is that a promissory note made by the debtor does not discharge the preexisting debt for which it is given, unless such be the express agreement of the parties. The intention and agreement of the parties is the controlling consideration. Whether the parties to these transactions intended that the notes should be regarded as absolute payment and extinguishment of the debt, or whether they were intended as additional evidence of the debt with the purpose that the original debt should still continue in force, is to be determined by the evidence. (*Kermeyer v. Newby*, 14 Kan. 164;

*McCoy v. Hazlett*, id. 430 ; *Shepard v. Allen*, 16 id. 182 ; *Medberry v. Soper*, 17 id. 375 ; *Bradley v. Harwi*, 43 id. 314, 23 Pac. 566.) Upon this subject there was testimony, and the trial court appears to have determined in accordance with the preponderance of the evidence that the notes given were only additional evidence of the same debt, and that it was not the intention of the parties that the giving of the same should operate as a payment or cancelation of the debt.

There is testimony which tends to show that the transaction with the Northfield National Bank was a purchase of the note and mortgage in controversy, and not a payment or satisfaction of the same ; and where there is testimony which tends to sustain a finding of fact made by the court, it is the end of the controversy as to that fact. The mortgage was recorded and the Capital company had not only constructive but actual notice of the existence of the mortgage. It was renewed from year to year, and the public records disclosed that the debt which it was given to secure was wholly unpaid, and that the parties to the same treated it as a subsisting debt, and the mortgage as a valid lien. The company therefore took the property subject to the mortgage. It had no right superior to those which would have been possessed by Hudson if there had been no transfer of the property from him to the company. It follows, too, that the liens held by Mulvane are subordinate to the mortgage in question.

There is nothing substantial in the claim that the action was barred by the two years' statute of limitations.

Finding no error in the proceedings, the judgment of the district court will be affirmed.