FLANAGAN v. OXLEY, Ex'r.

No. 29659.   June 10, 1941.

Rehearing Denied Sept. 16, 1941.

Application for Leave to File Second Petition for Rehearing Denied May 19, 1942.

*126 P. 2d 707.*

N. E. McNeill, of Tulsa, for plaintiff in error.

H. L. Smith and C. A. Kothe, both of Tulsa, for defendant in error.

RILEY, J. This is an action on a promissory note, brought by John Herbert Oxley, executor of the estate of Sarah M. Oxley, deceased, against J. P. Flanagan, maker.

The admitted facts are:

About 1914, Sarah M. Oxley and her husband moved from Lima, Ohio, to Tulsa, Oklahoma, to make their home with J. P. Flanagan and his wife, who was the daughter of Sarah M. Oxley.

Shortly thereafter the husband of Sarah M. Oxley died.

Thereafter, from time to time between June 1, 1915, and May 25, 1921, inclusive, Sarah M. Oxley turned over to defendant, J. P. Flanagan, the sum of $20,000.

Thereafter, from time to time, to about December 6, 1929, defendant paid to Sarah M. Oxley, either directly by check or by deposit to her credit in her bank, in monthly installments, the sum of approximately $24,687.

On January 20, 1930, defendant Flanagan executed and delivered the note here sued upon, payable on demand to Sarah M. Oxley or order, in the sum of twenty thousand dollars ($20,000) with interest at the rate of 6 per cent per annum.

Payments were made from that date to about July, 1932, at the rate of

$166.66 per month. From July, 1932, down to and including January, 1938, payments were made at approximately $100 per month.

No indorsement of any of the payments was made on the note.

Sarah M. Oxley died, testate, on February 12, 1938. John Herbert Oxley, her son, was appointed executor of her will and as such commenced this action June 22, 1938, seeking judgment for balance due on the note for $20,000, with interest thereon at 6 per cent per annum. Defendant answered by general denial, but admitted execution of the note, and pleaded that the note was without consideration, and in this connection admitted that he received the money from Sarah M. Oxley, at the time and in the amount above stated, but alleged that the money was delivered to him, not as a loan, but for safekeeping. That the several payments made or deposits to her credit in the bank down to about December, 1927, fully returned the amount received by him, and that payments or deposits to her credit thereafter were gratuitous and made for her support and maintenance, and that the note in question was executed and delivered to assure Mrs. Oxley of support after his death in case he should die first. He also pleaded the statute of limitations, asserting in substance that none of the payments or deposits to her credit were made by him or received by Mrs. Oxley as interest or payment of principal on said note, but were in the nature of gratuities.

But the principal question involved and substantially the only controversy is whether the original transaction between Sarah M. Oxley and Flanagan, wherein he received the $20,000 from her, was a loan or deposit for safekeeping.

These issues were tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $9,150.

The first contention on appeal is that the trial court erred in overruling defendant's demurrer to plaintiff's peti-

tion. Defendant calls attention to the fact that the note was payable on demand, dated January 20, 1930, and that the note, as pleaded in the petition and amendment thereto, failed to show any indorsments of payment thereon as interest or payment on the principal, and that the action was not commenced until June 22, 1938, and contends that the petition together with the exhibit show on the face thereof that the action is barred by the five-year statute of limitations. Subdivision 1, sec. 101, O. S. 1931, 12 Okla. Stat. Ann. § 95.

It is true that the note failed to show any indorsements of payments. But plaintiff's petition alleges that — "defendant paid to the said Sarah M. Oxley, now deceased, the interest on said note up to and including the 31st day of January, 1938." And by way of amendment plaintiff particularly alleged: "That on January 18, 1938, the defendant paid to the said Sarah M. Oxley as interest on said note the sum of $100, representing interest at the rate of 6 per cent per annum on the principal of said note for the month of January, 1938." This was an allegation of payment of a specific amount on a specific date, for a specific purpose, which is sufficient to bring the allegations within the requirement stated in Sullins et al. v. Domer, 176 Okla. 45, 54 P. 2d 391, and Barlow v. Prudential Insurance Co. of America, 178 Okla. 265, 62 P. 2d 969.

It is not necessary that indorsements of payments appear upon the note itself.

It is the payment and not the indorsement, as the evidence of payment, that tolls the statute where the issue is joined by answer. 37 C. J. 1151. Hastie et al. v. Burrage et al., 69 Kan. 560, 77 P. 268; Topeka Capital Co. et al. v. Merriam, 60 Kan. 397, 56 P. 757; Schaefer et al. v. Baker et al., 181 Ark. 620, 27 S. W. 2d 83.

The petition as amended was sufficient to withstand the demurrer.

Defendant asserts that the court erred in overruling defendant's demurrer to

plaintiff's evidence. In this connection defendant asserts that there was no competent evidence tending to show that the various credits, or payments, whether made by check direct to Mrs. Oxley or by means of deposit to her credit in the bank, were made as payments of interest or principal of the note.

It appears that Sarah M. Oxley in her lifetime kept a memorandum book in which she entered the checks she had drawn on her account, and the entries of deposits made to her credit in the bank. As to dates and amounts, the entries in her book correspond closely with the list of payments shown by the itemized statement of defendant attached to his answer, and there is substantially no controversy as to the amounts or dates of the various entries listed as payments.

Beginning with about October 15, 1926, and extending to about September, 1932, in substantially all the entries of these payments on the book, after the date of each entry and before the amount, the word "interest" was written in the handwriting of Sarah M. Oxley. The books were introduced in evidence over the objection of defendant. The objection was particularly directed to the word "interest" therein.

The contention is that these entries in the book kept by Sarah M. Oxley, in her lifetime, were incompetent as self-serving declarations and without them there is no competent evidence tending to support the verdict.

The question is, Was there error in admitting in evidence these book entries?

In support of his contention that such evidence is inadmissible, defendant cites a number of cases, among which is Libbey and Another v. Brown, 78 Me. 492, 7 Atl. 114, wherein it is held:

"An entry by a creditor, upon his own books, of an alleged payment on account of a debtor, is not admissible, in a suit against the debtor, to remove the bar of the statute of limitations."

And another case, Townsend Bank v. Jerome B. Whitney (3 Allen) 85 Mass. 454, wherein it is held:

"In an action to recover back money paid by mistake, over and above the amount due and intended to be paid, the defendant cannot be allowed to introduce in evidence his own cash book, in corroboration of his testimony, to show the amount of money received by him: . . ."

Another case is Oberg et al. v. Breen, Executor, 50 N. J. L. 145, wherein it is held:

"Books of account of a merchant are not evidence in his own favor with respect to payments credited in them to his customer."

Apparently the reason for the holding in said cases is that such book entries are self-serving declarations or declarations in self-interest.

But such entries are not always regarded as self-serving or in the interest of the person making such entries, where receipt of money representing the alleged debt is admitted. Entries showing receipt of money from a debtor, the date and amount thereof, made by the creditor in his own books, in some cases are held to be entries or declarations against his own interest, as an admission that the debtor actually paid him that amount of money at the time indicated, thereby reducing the principal amount of the indebtedness or interest due thereon as the case may be. So, let the principal indebtedness be admitted or proven, such entries are admissions as statements against interest of the creditor in favor of the debtor. Witham v. Taylor, 3 Law Reports (1 Chancery Div.) 605.

It may be observed that these decisions, for and against the admissibility of such evidence, are without regard to any statutory provision. It may be safely assumed that there were no statutory provisions in force in any of the above jurisdictions regulating admission in evidence of books of account.

Section 336, O. S. 1931, 12 Okla. Stat. Ann. § 501, is a statutory rule of evi-

dence reasonably governing such a matter in this state; it provides:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the hand-writing of the person who made the entries, in case of his death or absence from the county, or upon proof that the same were made in the usual course of business."

There was evidence to qualify the book entries under said section, and thereunder the entries were admissible for all purposes. Jones v. Sinclair Crude Oil Purchasing Co. et al., 130 Okla. 182, 266 P. 439; Clover v. Neely, 116 Okla. 155, 243 P. 758; Maney et al. v. Cherry, 170 Okla. 469, 41 P. 2d 82; Shefts Supply, Inc. v. Cole, 169 Okla. 259, 36 P. 2d 754.

It is suggested that that part of the entries purporting to show "interest" was inadmissible. The record discloses that sometime about 1917, defendant's wife died; that thereafter his mother-in-law, Mrs. Sarah M. Oxley, continued to reside with defendant in his home in Tulsa, until about 1921, when defendant was remarried; that thereafter Mrs. Oxley lived at an apartment in Tulsa.

The evidence further shows beyond question that while Mrs. Oxley lived with defendant he assisted her in keeping her books.

The record further discloses, without denial, that defendant in his own hand-writing, made entries in Mrs. Oxley's book of account as follows:

"1921.   May 2, Deposit Ck JPF
         for int. Jany Feby Mch
         Apl               $400.00
         'May 26 Deposit Ck JPF
         int May            100.00"

The initials JPF stood for J. P. Flanagan.

Defendant does not contend that that part of the entries in the book was incompetent. It was competent to prove that the payments noted there were made as payment of interest and as tending to show that Mrs. Oxley had loaned the money to defendant rather than placed it with him for safekeeping.

The entries of the word "interest" subsequently made by Mrs. Oxley, standing alone, may not be admissible as evidence tending to show on what account the payments were made, but in view of the previous entries made by defendant himself, and defendant's admissions that he had received the $20,000, and the uncontradicted evidence that defendant had made the several payments in the amounts and on the dates indicated, a sufficient connection is shown to render the entries admissible in evidence. Witham v. Taylor, supra.

There was no error in the admission of evidence. With it there is ample evidence to support the verdict, unless it appears that the debt has been repaid in full as claimed under a separate proposition which we now consider.

Defendant in his brief has compiled a statement showing the payments, their dates and amount; and contends that this tabulation upon a basis of 6 per cent interest shows the debt to have been paid in full; in fact, overpaid.

The difficulty with this claim is that there is evidence in the record tending to show that there was a prior note given by defendant bearing 10 per cent interest instead of 6 per cent, and that defendant had admitted that there was such a note, and had admitted that he paid interest on the note at 10 per cent for a long time.

Ten per cent interest on the amount admitted to have been received (from the day defendant admits having received same) to January 20, 1930, the date of the note, would be approximately the amount defendant claims to have paid.

Whether such former promissory note was given, and if so, the rate of interest it bore, was a question of fact for the jury.

Other questions are presented going to alleged error in the instructions given and in reference to certain requested instructions refused. A careful examination of the instructions given will disclose no error.

Judgment affirmed.

CORN, V. C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., dissenting. BAYLESS, J., absent.

---

WELCH, C. J. (dissenting). I cannot agree with the rule of law announced in paragraph 3 of the syllabus as applied to the facts of the case. In my view there was error in the admitting of evidence.