Tom Burns et ux., Plaintiffs, v. Joe Burns et al., Defendants.

Damien Burns, Appellant, v. Hans Eichhoff et al.,
Appellees.

No. 46242.

October 19, 1943.

Van Allen & Van Allen, of Mt. Pleasant, for appellant.

J. V. Gray and Galer, Galer & Galer, all of Mt. Pleasant, for appellees.

C. M. Vance, of Mt. Pleasant, for plaintiffs and for the referee.

OLIVER, J.—On April 16, 1925, Joe Burns and wife executed and delivered to Stark Doan their note for $2,500, due two years after date, together with their mortgage securing the same upon Joe Burns' undivided one-fifth interest in certain land in Henry County, Iowa. Said mortgage was recorded. Appellees hold judgments of Henry County District Court against Joe Burns.

This controversy is one phase of an action to partition said real estate, in which action Joe Burns and his brother, appellant Damien Burns, as owners of undivided interests therein, are parties. The referee in partition filed a report setting out said mortgage and judgments, stating the mortgage appeared to be outlawed, and asking the court to determine the validity and priority of the various liens. Thereafter, on March 7, 1942, Stark Doan assigned said note and mortgage to appellant, Damien Burns, for a consideration of $50 cash and a promise of an additional $100 if the lien of said mortgage should be established as prior to said judgments. On March 7, 1942, Joe Burns and wife made to appellant, Damien Burns, their signed written admission of and promise to pay the indebtedness upon said note and mortgage in the sum of $2,000, plus certain interest.

The judgment held by appellee Mitchell was secured March 2, 1936. The judgment of appellee Eichhoff was secured on October 5, 1937, for $2,740.55 and costs.

Pleadings were filed by the contending parties and the matter was tried to and determined by the court. Part of the Mitchell judgment was for rent. The court held the lien of such part was barred by the two-year limitation period of section 11033.1, Code of Iowa, 1939. The remainder, $75.60, with interest and one half the costs of that suit, was held not barred. The order provided that the mortgage owned by Damien Burns should not be allowed as a prior lien on the net share of Joe Burns in the proceeds of the partition sale, and (subject to certain taxes) said order fixed the Mitchell judgment, in the reduced amount,

as the first lien, and the Eichhoff judgment as the second lien. From said adjudication Damien Burns has appealed.

There is some disagreement between the members of this court relative to certain legal propositions involved in this case, and dissenting opinions by Chief Justice Mulroney and Justice Bliss have been filed. The latter would overrule Kerndt & Bros. v. Porterfield, 56 Iowa 412, 9 N. W. 322. As a result of our efforts to answer the dissents, this opinion is somewhat over-extended. It may be noted that from the practical standpoint of the contending parties the result of this opinion and each of the dissents would be the same.

The general statute of limitations, section 11007, Code of Iowa, 1939, limits the time of bringing actions upon written contracts to ten years after their causes accrue. It is a statute of repose, which simply takes away the right to maintain an action but does not destroy the cause of action. Williams v. Burnside, 207 Iowa 239, 222 N. W. 413. It affects the remedy but not the right. Meek v. Meek, 45 Iowa 294, 297.

There is some diversity of opinion whether a new promise to pay a debt already barred creates a new cause of action so that the suit should be brought upon it and not upon the original promise. 37 C. J. 1140; 34 Am. Jur. 236, 237. However, it is the settled rule in Iowa that the promise does not constitute a new cause of action. It is effective only to revive the original cause of action or to extend its life by tolling the statute of limitations and starting it anew. Mortenson v. Knudson, 189 Iowa 379, 386, 176 N. W. 892, 895; Frisbee v. Seaman, 49 Iowa 95; Bayliss v. Street, 51 Iowa 627, 2 N. W. 437. *In jurisdictions adopting this view it is said the statute does not annihilate the debt but merely suspends the remedy.* 34 Am. Jur. 237. See Beckett v. Clark, 225 Iowa 1012, 1016, 282 N. W. 724, 726, 121 A. L. R. 912; 25 Iowa L. Rev. 146–153.

Code section 11018 provides that causes of action founded on contract are revived by a signed written admission of the party to be charged. Such admission may be made either before or after the statute has run. In re Estate of Sleezer, 209 Iowa 56, 227 N. W. 644. It operates to waive the defense of the statute. Spilde v. Johnson, 132 Iowa 484, 109 N. W. 1023, 8 L. R. A., N. S., 439, 119 Am. St. Rep. 578.

A mortgage upon real property is not a sale thereof. It does not constitute a pro tanto disposition of the property by the mortgagor. As pointed out by Judge Dillon, in Newman v. De Lorimer, 19 Iowa 244, a mortgage is not an estate in the land but simply a specific lien or charge on the land·to secure a debt.

Clinton County v. Cox, 37 Iowa 570, 571, states:

"Under the laws of this State a mortgage conveys no interest in, or title to, lands, but is simply a lien thereon for the purpose of securing the indebtedness which is its foundation. It is an incident—a security, in the nature of a lien—of the debt. It survives until the debt be paid or discharged, or the mortgage is released. It is a convoy bearing a lien for the protection of the debt, and as long as that exists it is not relieved of the duty of protection or rendered ineffective for that purpose. When the debt is discharged or, by operation of law, may no longer be enforced its functions terminate, and not before."

Our attention has been called to a statement in Fitzgerald v. Flanagan, 155 Iowa 217, 222, 135 N. W. 738, 740, Ann Cas. 1914C, 1104:

" * * * the mortgage, being considered a mere incident to the debt, is, as a general rule, extinguished when the debt for which it is given is barred by the statute of limitations."

That statement may be subject to an interpretation not entirely accurate. The status of the mortgage and the debt are usually identical. A more accurate statement in Fitzgerald v. Flanagan, 155 Iowa 217, 220, 135 N. W. 738, 740, is:

"It is a general rule that, if there be no debt, there is no mortgage, and consequently, *if action for the debt be barred, an action to foreclose the mortgage is also barred.*" (Italics supplied.)

And, in the same case, 155 Iowa at page 223, 135 N. W. at page 741:

" * * * we are committed to the doctrine that, if the debt be barred by statute, the right to enforce a mortgage given to secure the debt is also barred * * *."

Statements that the mortgage is extinguished when the debt is barred by the statute of limitations mean the condition of the mortgage is the same as that of the debt which it secures. If the debt is unenforceable, the mortgage is in the same situation. But if the debt is not absolutely discharged or terminated beyond revivor, the mortgage likewise is not extinguished. Our authorities agree that usually the lifting of the suspense of the remedy on the debt, by written admission, also renders the security again enforceable. As was said in Mahon v. Cooley, 36 Iowa 479, 483:

"* * * the mortgage will follow it and will be valid as long as the debt can be enforced. It is then but an incident of the debt; its existence is measured and prolonged by the life of the debt. These are familiar doctrines that do not require for their support the citation of authorities."

Code sections 11602, 11603, make judgments liens upon real estate. A judgment lien is not a specific lien upon any real estate of the judgment debtor but is a general lien upon all his real estate, subject to prior liens or equities. Stiles v. Bailey, 205 Iowa 1385, 1388, 219 N. W. 537, 540. The lien of a judgment is junior to the lien of a prior mortgage even though the mortgage be unrecorded. Chapman v. Coats, 26 Iowa 288. A judgment creditor is not a purchaser for value of the land. Cumming v. First National Bank, 199 Iowa 667, 202 N. W. 556.

I. The dissenting opinion of Chief Justice Mulroney would adopt what it calls the "controlling equities" rule. We are told that whether the subsequent lienholders or grantees "acquired their liens or titles before or after the statutory period expired the true rule is that the revived first lien will be superior if the controlling equities are in favor of the holder of this lien." As we view this suggestion, it would in effect cast aside the recognized principles and rules by which courts have heretofore been governed in such cases and thus deprive the court of guiding landmarks. We cannot subscribe to this theory.

We think that what the dissenting opinion of Chief Justice Mulroney refers to as the true rule is merely an exception to the general rule and is in the nature of an estoppel.

Kerndt & Bros. v. Porterfield, supra, 56 Iowa 412, 414, 9 N. W. 322, 323, states:

"As between the mortgagor and mortgagee it cannot be doubted that a new promise which is sufficient to revive the debt will also revive the mortgage. It seems that the same rule ought to prevail against all persons interested in the mortgaged property unless there exist reasons which in equity would render it unconscionable to enforce the mortgage lien as against their interest."

Gilman v. Heitman, 137 Iowa 336, 346, 113 N. W. 932, 935, cites the following example:

" * * * it has been held that under some circumstances, where an innocent purchaser for a valuable consideration takes conveyance by warranty deed in which the mortgagee joins as a grantor he takes the title free from the lien of the mortgage which the record shows to have been barred by the statute, and that a new promise thereafter made by the mortgagor will not revive the mortgage as against such grantee. Jenks v. Shaw, 99 Iowa 604."

In this case there are no controlling equities which render the Mitchell judgment superior to the prior mortgage. There is no contention that when the lien of the Mitchell judgment attached any conduct on the part of the holder of the prior mortgage led Mitchell to reasonably believe it was not a lien. And had there been such conduct, Mitchell could base thereon no claim to controlling equities because he was not a purchaser. He parted with nothing for his lien.

The dissenting opinion of Chief Justice Mulroney would hold that the rights of Damien Burns are less than those of the original mortgagee because Damien Burns was a brother of the mortgagor and purchased the mortgage for a small consideration prior to the revivor. If the purchase by Damien Burns was not bona fide he acquired no rights, not less rights. But the consideration, though not large, was valid, and the record does not support the surmise that there was not an actual purchase.

II. The Mitchell judgment was secured in 1936. At that time the remedy upon the mortgage was not barred by the

statute of limitations. Appellant's mortgage was revived after the statute had run. Kerndt & Bros. v. Porterfield, supra, 56 Iowa 412, 414, 9 N. W. 322, 323, holds that where a note and mortgage are revived after the bar of the statute, the priority of the mortgage lien is preserved as against a subsequent mortgage executed before the bar of the statute. In that case the court said:

"An action to foreclose a mortgage is not barred by the statute of limitations so long as the debt remains unpaid and capable of being enforced. Brown v. Rockhold, 49 Iowa, 282; Clinton County v. Cox, 37 Iowa, 570. The mortgage is an incident of the debt and follows it, and its existence as a lien is only terminated when the debt ceases to be enforceable.

"As between the mortgagor and mortgagee it cannot be doubted that a new promise which is sufficient to revive the debt will also revive the mortgage. It seems that the same rule ought to prevail against all persons interested in the mortgaged property unless there exist reasons which in equity would render it unconscionable to enforce the mortgage lien as against their interest. If such a rule did not prevail the mortgage would not continue as long as the debt existed, and the mortgagee would be deprived of the security provided for the debt. We think, however, that equities may arise which would defeat or suspend the lien in order to protect the interest of others. It may be, but the point we do not decide, that one acquiring an interest in mortgaged property after foreclosure of the mortgage is barred by the statute, and before a new promise is made, would hold by a right superior to the mortgagee after his debt is revived by a new promise. But the case is different where one acquires such an interest before the action upon the mortgage is barred, and after the period of limitation has run the debt is revived by a new promise. In such a case the debt was enforceable when the interest of the adverse claimant was acquired with full notice of the mortgage lien. When his interest was acquired, he took it subject to the mortgage, with the knowledge that the debt could be revived by a new promise and the mortgage lien would stand as long as the debt existed. When the mortgage is foreclosed under a new promise removing

the bar of the statute, he is in no different condition than he was in when he acquired his interest. If he was satisfied to acquire his interest while it was subject to the mortgage, he ought to be content to hold it in that condition. He can urge no equity which will relieve his property from the lien of the mortgage. * * * It seems that a different rule is recognized in California."

It has been suggested that the Kerndt case is not supported by later decisions; that its reasoning is faulty, and that it should be overruled. Whether or not subsequent Iowa decisions support the Kerndt case may best be determined by the language of such decisions.

Gilman v. Heitman, supra, 137 Iowa 336, 346, 113 N. W. 932, 935, states:

"In Kerndt v. Porterfield, supra, 56 Iowa, 412, the question presented was whether a new promise of a mortgagor would have the effect to remove the bar of the statute of limitations as against subsequent liens taken before the mortgage became barred, and not foreclosed until after the revival of the indebtedness. This inquiry we there answered in the affirmative. That ruling has since been followed in Bank v. Woodman, 93 Iowa, 668; Hellman v. Kiene, 73 Iowa, 448; Freeburg v. Eksell, 123 Iowa, 464."

In First National Bank v. Woodman, 93 Iowa 668, 678, 62 N. W. 28, 31, 57 Am. St. Rep. 287, the court, after discussing the Kerndt case, said:

"In view of the statute on the subject, and the authorities cited, we regard it as fairly well settled that in the absence of controlling equities, a second mortgagee, where a prior mortgage is uncanceled, must take notice of the fact whether or not the cause of action thereon has been revived."

In Cook v. Prindle, 97 Iowa 464, 474, 66 N. W. 781, 784, 59 Am. St. Rep. 424, the first mortgage was revived before it was barred. The decision refers to the Kerndt and Woodman cases with apparent approval, but turns upon the rule that after the mortgagor has disposed of the land he may not revive the

lien of the barred mortgage as against the land. The court said:

"The law is well settled that, after the mortgagor disposes of the mortgaged premises by deed, he loses all control over them. He is then powerless to create or revive charges against such lands. As is often said, as to such premises, he is a stranger, and his power to revive a mortgage does not exist if, under the circumstances, he has not power to give a new one which would be binding thereon."

The Cook case definitely differentiates a mortgage from a sale or disposition of the property.

See, also, Day v. Baldwin, 34 Iowa 380.

The dissenting opinion of Justice Bliss would hold a mortgage is a pro tanto sale. Were we to so hold, it would follow, under the rule of the Cook case, that no mortgagor could ever revive a mortgage, since it could be said the mortgage was a disposal of the particular interest in the land represented by it and hence the mortgagor had lost all control over it.

It may be true that under the old common-law rule a mortgage was considered a conveyance of the land or a pro tanto disposition of the property by the mortgagor. But that is not the rule in Iowa. Most American jurisdictions, including Iowa, have definitely abrogated the old common-law rule. Section 10053, Code of Iowa, 1939 (section 1210, Code of 1851); White v. Rittenmyer, 30 Iowa 268; 36 Am. Jur. 690; 41 C. J. 279; 2 Jones on Mortgages, 8th Ed. 1048. As heretofore pointed out, it is not a reduction of his interest in the land. It is merely a lien thereon. The mortgagor may revive it either before or after the bar, and upon revival it will be superior to all liens to which it was superior when said liens attached to the property. This is the vital difference between the Cook case and those cases in which the mortgagor has not disposed of the mortgaged property.

German American Sav. Bk. v. Hanna, 124 Iowa 374, 379, 100 N. W. 57, 58, states:

"The admission [after the bar] that the notes were unpaid was analogous to a renewal of them, and this certainly would

not release the security. * * * It is also the general rule that, where a note is secured by a mortgage, a revival of action on the note will also revive the mortgage." (Citing the Kerndt and Woodman cases.)

Jenks v. Shàw, 99 Iowa 604, 611, 68 N. W. 900, 902, 61 Am. St. Rep. 256, states:

"In Brown v. Rockhold, 49 Iowa, 285, it is said: 'The general rule is that the mortgage is but a mere incident to the note which it is given to secure, and that nothing short of payment of the debt, or its extinguishment by operation of law, will discharge the mortgage lien.' This doctrine is announced in Kerndt v. Porterfield, 56 Iowa, 412 (9 N. W. Rep. 322). See, also, Bank v. Woodman, 93 Iowa, 668 (62 N. W. Rep. 30) ; State v. Stuhtmiller, 94 Iowa, 750 [Robertson v. Stuhlmiller, 93 Iowa 326] (61 N. W. Rep. 986). The principle is well established by these and other cases that an action to foreclose the mortgage is not barred so long as the debt which it secures is enforceable."

Reference will now be made to authorities from other jurisdictions, among which there is much conflict. In Consolidated National Bank v. Van Slyke, 27 Ariz. 501, 506, 234 P. 553, 555, 38 A. L. R. 825, the court discusses the conflicting rules in the following language:

"The question may be stated in the abstract thus: 'When A. gives a mortgage to B. and thereafter, and before the running of the statute of limitations, junior liens attach to the lands, does an acknowledgment made by C., a subsequent grantee, before the statute has run, toll the statute as to the junior lienholders?'

"There is an irreconcilable conflict in the authorities on this point, due, apparently, to a difference of opinion as to the relative importance of two principles which are both equitable, but in conflict with each other. The first principle may be stated thus: 'A junior lienholder, when he acquires his lien, is entitled to assume the rights outstanding against him at the time will not be increased or enlarged without his consent, and a sub-

sequent waiver of the statute of limitations as to the senior lien constitutes such enlargement.'

"This principle has been adopted as a paramount consideration by the Supreme Courts of California, Washington, Utah and possibly one or two others, and the decisions of these courts have been uniformly consistent therewith. [Citing authorities.]

"The other principle is: 'If a junior lienholder had notice, actual or constructive, of a valid and enforceable prior lien, at the time he acquired his rights, he took the latter subject to a possible extension of the time of payment, and cannot complain thereof, as it is only an incident of the lien.'

"To this effect are the decisions of the Supreme Courts of Iowa, Nebraska, Vermont, Texas, Mississippi and Minnesota." (Citing the Kerndt case and other cases.)

Smith v. Bush, 173 Okla. 172, 175, 44 P. 2d 921, 923, 101 A. L. R. 330, states:

"Two distinct and opposing lines of authority have developed in other jurisdictions. Utah, Kentucky, North Dakota, California, and Arkansas approve the view that the statute of limitations is available as a defense to the subsequent incumbrancers or purchasers of interests in mortgaged premises, notwithstanding the subsequent payment, acknowledgment, or promise by the mortgagors or debtors. [Citing decisions from said jurisdictions.]

"We do not deem it necessary to engage in an exhaustive discussion of the reasoning upon which the result announced in the above cases is based. The general theory running throughout is that the person who acquires an interest in mortgaged premises subsequent to the mortgage may rightfully assume that the obligation secured by the mortgage will not be enlarged; that a partial payment, acknowledgment, or promise by the mortgagor, if it delayed the operation of the statute of limitations as to the subsequent purchasers or incumbrancers, would amount to such an enlargement of the prior mortgage obligation without their consent, and would therefore be inequitable.

"The opposite view has been announced in Kansas, Arizona, Iowa, Maryland, Texas, Nebraska, New York, Minnesota, Mississippi, Vermont, Oregon, and by the Supreme Court of the

United States. [Citing decisions from said jurisdictions, including the Kerndt case.]

"These cases proceed upon the theory that a subsequent purchaser or incumbrancer of an interest in mortgaged premises, with notice actual or constructive of the mortgage, takes his interest subject to the terms of the mortgage contract and the law applicable thereto; that the mortgage is an incident to the debt; that as a matter of law the period of computation of the statute of limitations may be delayed by a payment on the debt, or by a written acknowledgment of, or promise to pay, the same. The additional burden occasioned by the delay, if any, must be taken to have been within the contemplation of the purchaser by reason of the nature of the contract and the law governing the rights of the parties thereto."

It will be noted that the reasons given in the quoted parts of Smith v. Bush and the Van Slyke cases, supra, as the basis for the majority rule, are substantially the same as those stated in the Kerndt case. True, the cited cases in general refer to revivors prior to the statutory bar. But the principle that a junior lienholder, with actual or constructive notice of a valid and enforceable prior lien, takes his lien subject to the extension or revival of such prior lien, should be equally applicable whether the revivor is before or after the expiration of the statute of limitations.

The minority doctrine is that after the junior lien attaches, the senior mortgagor, with notice thereof, may not extend or revive his mortgage so as to affect said junior lien, even though such extension or revivor be made before the statute has run. This is directly contrary to the rule of various Iowa decisions.

Some contention has been made that Clark v. Grant, 26 Okla. 398, 109 P. 234, 28 L. R. A., N. S., 519, Ann. Cas. 1912B, 505, and Schmucker v. Sibert, 18 Kan. 104, 26 Am. Rep. 765, are contrary to the Kerndt case. Neither cited case is factually in point. The basis of the decision in the Schmucker case, as stated in the headnote in the American Reports, is:

"A revivor of a note barred by the statute of limitations

will revive a mortgage executed to secure it, so far as the interest of the mortgagor in the premises, but not as to a grantee of the mortgagor previous to such revivor.''

That is the rule of Cook v. Prindle, supra, 97 Iowa 464, 66 N. W. 781, 59 Am. St. Rep. 424, which cites the Schmucker case as an authority.

Hughes v. Hess, 141 Tex. 511, 515, 172 S. W. 2d 301, 303, involved in part the status of a junior judgment as against a prior mortgage. The court quoted with approval from Novosad v. Svrcek, 129 Tex. 34, 38, 102 S. W. 2d 393, as follows:

'' 'The rule is now settled that the vendee may execute an extension to the holder of the original vendor's lien notes without the consent of a party who holds a subsequent lien on the land, and said agreement is binding on the junior lien holder. [Citing authorities.] It has also been held that *where a party acquires a junior lien when the senior lien was in force, and* while the junior lien was in force *the first lien became barred by limitation and it was renewed and extended in writing,* duly acknowledged and recorded, *said renewal of the first lien would be binding on the junior lien holder.' ''* (Italics supplied.)

Bellah v. Dennis, 129 Tex. 367, 104 S. W. 2d 490, and W. T. Rawleigh Co. v. Terrell, Tex. Civ. App., 171 S. W. 2d 198, enunciate the same rule. In Division III of this opinion are other Texas decisions and a quotation from Wiltsie on Mortgage Foreclosure. These clearly differentiate between the status of subsequent liens which attach prior to the running of the statute and those which attach after the statute has run and before the revivor.

Appellees argue that permitting the revival of mortgage liens, in cases such as this, will cause confusion and uncertainty in connection with titles to real estate. The answer to this argument will be found in Code section 11028. That section bars the foreclosure of mortgages more than twenty years old unless the record shows that less than ten years have elapsed since the original or extended due date, etc. It is not here applicable because the mortgage is not twenty years old. This statute has been considered in Newgirg v. Black, 174 Iowa 636,

156 N. W. 708; Lackey v. Melcher, 225 Iowa 698, 281 N. W. 225, and other cases. The first legislation of such character was enacted in 1906, subsequent to the decision in the Kerndt case and several later cases which support it. It is proper to assume the legislature was cognizant of these decisions when it acted. That the legislature did not disturb the rule when it was legislating upon the subject is some indication that it was content with such rule.

It is unnecessary to say that the Kerndt case and supporting cases, as decisions of this court, are entitled to great weight and respect. Aside from that, such cases enunciate a rule of property which has been in effect in this state for more than sixty years. This court has always been reluctant to uproot a rule of property once thoroughly embedded in our jurisprudence. Rockafellor v. Gray, 194 Iowa 1280, 1282, 191 N. W. 107, 108; National City Bank v. Fairbank State Bank, 173 Iowa 489, 493, 155 N. W. 963, 965; Montgomery v. City of Des Moines, 190 Iowa 705, 706, 180 N. W. 723.

Our attention has been called to authorities holding the right to set up the bar of the statute of limitations, after the statute has run, is a vested right and cannot be taken away by legislation. We need not consider that doctrine because it is not applicable under the facts of this case. In the case at bar the rights of the junior lienholder never vested. The right to enforce the mortgage was simply suspended subject to revivor. When the Mitchell lien attached, Mitchell was bound to know and consider that, under the law then in effect, the mortgage might thereafter be revived and that this revivor might be before or after the statutory period. First National Bank v. Woodman, supra. In other words, Mitchell took his lien subject to the right to revive the mortgage. The enforcement of this right of revivor will take away from Mitchell no vested rights and he has no ground for complaint. Kerndt & Bros. v. Porterfield, supra.

The principle of the Kerndt case is that one who secures a junior lien upon real estate, with actual or constructive notice of a prior valid and enforceable mortgage, takes his lien subject to the terms of the mortgage contract and the law applicable thereto and subject to the right of extension or revivor

of the debt secured by the mortgage, which revivor may be either before or after the expiration of the statute of limitations. Since the Kerndt case the precise proposition there involved has not been before this court but the principle has been recognized by various decisions and has never been questioned. It accords with the rule in the majority of other jurisdictions. It is based upon sound reasoning. To overrule it upon the theory that a mortgage, or other lien, is a pro tanto sale or disposition of the mortgaged property would reinstate the old common-law rule so long abrogated in this state. We adhere to our former decisions and hold the lien of appellant's mortgage superior to the lien of the Mitchell judgment.

III. The status of the Eichhoff judgment differs from that of the Mitchell judgment in that the Eichhoff judgment was secured after the remedy upon debt and mortgage was barred and before the revivor. At the time the lien of the Eichhoff judgment attached, the debt and mortgage were not enforceable.

The following statement appears in Kerndt & Bros. v. Porterfield, supra, at page 414 of 56 Iowa, page 323 of 9 N. W.:

"It may be, but the point we do not decide, that one acquiring an interest in mortgaged property after foreclosure of the mortgage is barred by the statute, and before a new promise is made, would hold by a right superior to the mortgagee after his debt is revived by a new promise."

In First National Bank v. Woodman, supra, 93 Iowa 668, 678, 62 N. W. 28, 31, 57 Am. St. Rep. 287, the court said:

"* * * in the absence of controlling equities, a second mortgagee, where a prior mortgage is uncanceled, must take notice of the fact whether or not the cause of action thereon has been revived."

Hellman v. Kienc, 73 Iowa 448, 450, 35 N. W. 516, 518, 5 Am. St. Rep. 693, holds a debtor who has made an assignment for the benefit of creditors may thereafter revive a barred debt to share in the proceeds of the assignment. The decision points out that the other creditors "possess no lien or priority which is defeated."

Both sides make reference to statements found in the foregoing and other Iowa cases, none of which appears to be directly in point. Nor has this court determined this proposition.

1 Wiltsie on Mortgage Foreclosure, 5th Ed., 149, 150, section 76, states:

"As a general rule where the statute of limitations has entirely run, operating to bar a mortgage, a lien or conveyance subsequently acquired in favor of a third person is not affected by a subsequent payment by the mortgagor made on account of the mortgage or a subsequent acknowledgment by him of the indebtedness. The rights of a lienor whose lien attaches after the indebtedness has become outlawed, or the right of the subsequent grantee, cannot be affected by any act of the mortgagor. * * * But where the indebtedness secured by a prior mortgage is not barred at the time of the attaching of a junior lien, a subsequent written acknowledgment or partial payment in connection with the prior mortgage does operate to extend the statute of limitations with respect thereto, as to the junior lienor and operates to continue it as a valid lien superseding the junior lien for the full statutory period after the acknowledgment or payment."

Johnson v. Johnson, 81 Mo. 331, 336, states, by way of dictum:

"When the bar of the statute is complete, any act of the mortgagor which revives the debt, also revives the lien of the mortgage, unless the parties agree otherwise. [Citing authorities.] Such acts are always binding between the mortgagor and mortgagee. 2 Jones on Mortgages, §1202 (3 Ed.). A well defined limitation of this rule excepts from its effect the rights of purchasers and mortgagees, acquiring title after the bar is complete, and before the acts of revivor."

This same dictum is quoted in Clark v. Grant, supra.

In Holford v. Patterson, 113 Tex. 410, 413, 257 S. W. 213, 214, the court said:

"It cannot be questioned that the note to Hawk, secured by mortgage, was barred at the time defendant in error Patter-

son became invested with title * * *. Patterson having once acquired title not subject to any enforceable encumbrance, the same could not be affected by a subsequent contract between others to which he was not a party.''

It should be noted that the rule in Texas appears to be contrary to the Iowa rule enunciated in Cook v. Prindle, supra, and other cases, that the mortgagor cannot revive the mortgage after he disposes of the land. · Therefore, the decision did not turn upon this latter point, as it probably would have done under the doctrine adopted in this state.

Biggs & Co. v. Caldwell, Tex. Civ. App., 115 S. W. 2d 461, 463, quotes the following from 9 Tex. Jur. 182, section 77:

'' 'It seems to be settled that when once a debt is barred by the statute of limitations, the mortgage has expired, and that a subsequent renewal of the debt will have the effect to renew the mortgage as between the parties but will not operate to prejudice the rights of third persons who in good faith acquired rights in the property during the time the debt was barred. The point was decided early by the Supreme Court, and has never been overruled; on the contrary, the case has been cited with approval after a very careful reconsideration of the question.' ''

In Yates v. Darby, 133 Tex. 593, 603, 131 S. W. 2d 95, 101, the junior lienholder held a judgment lien. The court said:

''We recognize also the rule, established by several cases, that a junior lienholder who acquires his lien at a time when the first lien and the first lien notes are not barred is bound by an extension contract between the owner of the land and the holder of the first lien notes, provided that contract is sufficient as between the parties thereto. [Citing cases.] The important differences between the facts of those cases and the facts of this case are that there was no contract for the extension of plaintiffs in error's note and *that defendant in error's rights as lienholder accrued at a time when the note secured by the vendor's lien retained by plaintiffs in error was more than four years past due. Such rights so acquired could not be affected by the subsequent transactions* between plaintiffs in error

and Peter Smith *to which defendant in error was not a party."* (Italics supplied.)

In the preceding division of this opinion are quotations from Consolidated National Bank v. Van Slyke, 27 Ariz. 501, 234 P. 553, 38 A. L. R. 825, and Smith v. Bush, 173 Okla. 172, 44 P. 2d 921, 101 A. L. R. 330. These refer to the principles upon which are based the decisions of this court and various other courts which have adopted the majority rule. In the Van Slyke case, it is said, at page 507 of 27 Ariz., page 555 of 234 P.:

"If a junior lienholder had notice, actual or constructive, of a valid and *enforceable* prior lien, at the time he acquired his rights, he took the latter subject to a possible extension of the time of payment * * *." (Italics supplied.)

It will be noted that the rule applies to an enforceable prior lien.

Appellant's mortgage was not enforceable at the time the Eichhoff judgment lien attached. Since there was no enforceable mortgage when the Eichhoff lien attached, he was not bound to anticipate that the mortgage might thereafter be revived. To give the subsequently revived mortgage priority over the Eichhoff judgment lien, in effect would amount to casting upon Eichhoff an additional burden not within his contemplation at the time his judgment lien attached. While the line of demarcation between the status of the Mitchell and Eichhoff liens is not broad, we think it is distinct. We conclude the lien of appellant's mortgage is inferior to the lien of the Eichhoff judgment.

IV. We have already held the lien of the mortgage superior to the lien of the Mitchell judgment. The Mitchell judgment lien attached prior to the Eichhoff judgment lien, and therefore is superior to the Eichhoff judgment lien. Hence, each of the three liens is superior to one of the other liens and inferior to the remaining lien.

This circuity results in a question somewhat analogous to that presented in certain jurisdictions under statutes which provide that failure to take out and levy execution within a year subordinates the lien of the senior judgment to other judgments. 1 Black on Judgments, 2d Ed., 710, section 456, refers

to it as "an extremely interesting and peculiar question—called the 'triangular question' * * *." See, also, 31 Am. Jur. 38. Holliday v. Franklin Bank, 16 Ohio 533, 535, states:

"If it be attempted to settle the question upon the principle of superiority, it runs in a circle and produces no result."

The court in that case adopted the rule which there appeared least objectionable, to wit, that each should have priority according to age.

In McCune v. McCune, 164 Pa. 611, 30 A. 577, Fullerton had three judgment liens followed by five judgment liens held by others. Thereafter, the Fullerton liens were satisfied. Thereafter, Charles McCune secured judgment against the debtor. Thereafter, the court canceled the satisfaction of the Fullerton liens. Then the property was sold under execution and the proceeds constituted a fund which the court said must be distributed "according to law and equity."

The court found Fullerton's liens superior to the five intermediate judgments, since the latter creditors had not been misled by the mistake in entering the Fullerton satisfactions. Fullerton's liens were held junior to the McCune judgment, the latter having attached while the former were not valid and enforceable liens. The intermediate liens were superior to the McCune lien.

The court held the fund should be distributed, first to Fullerton and second to the intermediate judgments, but that if the fund was large enough to have paid the intermediate judgments and leave a surplus, that would have gone to McCune, if Fullerton's judgments had been actually paid, as they appeared to be, McCune could secure the application of the surplus to his lien as against Fullerton.

A solution similar to that worked out in the McCune case is here proper and feasible. We may start with the proposition that the Eichhoff judgment is superior to the mortgage and that it will be fair to the mortgage holder that the amount of the Eichhoff judgment, and no more, be held superior to his mortgage. Nor may Eichhoff complain if the amount of the prior Mitchell judgment is carved from the amount which would have been allotted to Eichhoff had he and the mortgage holder been

the only claimants. The result obtained by this approach is practical and appears equitable to each of the parties under the particular circumstances.

Accordingly, the part of the order establishing the lien of the Mitchell judgment, in the reduced amount, and certain costs, as superior to the liens of Eichhoff and appellant, is affirmed. The part of the order relating to the Eichhoff judgment is modified so that only the lien of so much of said judgment as exceeds the amount of the lien of the Mitchell judgment is fixed as superior to the lien of appellant's mortgage. The lien of the mortgage is established, subject to the foregoing, followed by the lien of the remainder of the Eichhoff judgment.—Modified and affirmed.

SMITH, HALE, WENNERSTRUM, and GARFIELD, JJ., concur.

MULRONEY, C. J., and MILLER, BLISS, and MANTZ, JJ., dissent.

MULRONEY, C. J. (dissenting)—I think the case should be affirmed and respectfully dissent. This is an equity case involving the order of priority between three lienholders. The original mortgagee acquired the first lien against this realty. While the original mortgagee held this lien, and before it was barred by the statute of limitations, Mitchell secured his judgment lien. After the mortgage was barred by the statute, Eichhoff secured his judgment. So on March 7, 1942, the liens against the property were as follows: (1) Stark Doan, the original mortgagee, held a mortgage that was barred by the statute of limitations (2) Mitchell held a judgment lien, and (3) Eichhoff held a later judgment lien. On that day Doan assigned the note and mortgage to Damien Burns, the mortgagor's brother, and the mortgagor and his wife executed a revival acknowledgment to Damien Burns. Damien Burns bases his right of priority on this revival agreement he secured from his brother.

In the case of Kerndt & Bros. v. Porterfield, 56 Iowa 412, 414, 9 N. W. 322, 323, this court held that a second mortgage is junior when it is obtained before the statutory period expired on a first mortgage, even if the first mortgage is revived after the expiration of the statutory period. Judge Bliss would overrule this case,

but I believe a study of the case would not warrant the conclusion that it holds that, in all cases, the revived first mortgage is superior to the second mortgage. In the course of the opinion, Justice Black stated:

"As between the mortgagor and mortgagee it cannot be doubted that a new promise which is sufficient to revive the debt will also revive the mortgage. It seems that the same rule ought to prevail against all persons interested in the mortgaged property *unless there exist reasons which in equity would render it unconscionable to enforce the mortgage lien as against their interest.* * * * We think, however, that equities may arise which would defeat or suspend the lien in order to protect the interest of others." (Italics supplied.)

The conclusion reached by the court in the Porterfield case is that:

"He [second mortgagee] can urge no equity which will relieve his property from the lien of the [first] mortgage."

In the case of First National Bank v. Woodman, 93 Iowa 668, 678, 62 N. W. 28, 31, 57 Am. St. Rep. 287, we quoted from the Porterfield case and spoke of "controlling equities." There the revival was executed before the bar of the statute against the first mortgage but the later mortgages were given to secure pre-existing debts. In holding the revived first mortgage superior, we stated:

"In view of the statute on the subject, and the authorities cited, we regard it as fairly well settled that in the absence of controlling equities, a second mortgagee, where a prior mortgage is uncanceled, must take notice of the fact whether or not the cause of action thereon has been revived. In this case the equities are not controlling in behalf of appellees. Except a small sum the mortgages were given for pre-existing debts owing before the action was barred on appellee's mortgage."

In Gilman v. Heitman, 137 Iowa 336, 346, 113 N. W. 932, 935, this court, speaking through Justice Weaver, stated:

"In Kerndt v. Porterfield, 56 Iowa, 412, the question presented was whether a new promise of a mortgagor would have the

effect to remove the bar of the statute of limitations as against subsequent liens taken before the mortgage became barred, and not foreclosed until after the revival of the indebtedness. This inquiry we there answered in the affirmative. That ruling has since been followed in Bank v. Woodman, 93 Iowa, 668; Hellman v. Kiene, 73 Iowa, 448; Freeburg v. Eksell, 123 Iowa, 464.''

In all of these cases involving situations where the holder of a revived lien is asserting priority over other lienholders or grantees who acquired their liens' or titles before or after the statutory period expired, the true rule is that the revived first lien will be superior if the controlling equities are in favor of the holder of this lien. In the ordinary case of a mortgage revived after the statutory period, the equities, as against a second mortgagee who secured his mortgage before the statutory period on the first mortgage expired, are usually in favor of the revived first mortgage. If, after the first mortgage is barred, the mortgagor again sells or mortgages the land and then revives the first mortgage, the equities would usually favor the grantee or second mortgagee. The point is that it is the application of equitable principles to the facts in each case that determines the priority.

Now, with the rule of the foregoing cases in mind, let us make a further examination of the evidence in this case. We learn from the record that the assignment of the first mortgage to the mortgagor's brother, and the revival promise given to the assignee, were all part of a plan whereby the mortgagor's brother would emerge with the property or the first lien on the property at little cost to himself. There is some evidence that Doan had been trying to collect his mortgage, but Damien Burns saw Doan a few days before March 7, 1942, and told him that this mortgage he held against his brother Joe Burns was outlawed but that he would give him $50 for it. Doan testified that Damien Burns paid him $50 for the assignment of this $2,500 mortgage and agreed to pay him another $100. Doan testified that he did not remember when the other $100 was to be paid but he ''guessed it was on condition if Damien wins the priority here.'' The record shows that on the day Damien received the assignment·of the note and mortgage his brother Joe immediately accommodated him with a new acknowledgment and promise to pay the mortgage. It

is upon this record that Damien asserts his priority. I feel that, within the controlling-equity rule, Damien Burns should not be given priority over either of the judgment creditors. The legal effect of the assignment that clothes him with the rights of his assignor is immaterial. Upon his claim of priority he must establish superior equities in his favor before this court will grant a superior order of priority.

I feel that under this record reasons exist "which in equity would render it unconscionable to enforce the mortgage lien" as against the judgment creditors, within the rule announced in Kerndt & Bros. v. Porterfield, supra. The general purpose of the statute with respect to revival agreements is to enable the honest debtor to revive the debt in return for the forbearance his creditor has shown to him. This general purpose should not be thwarted by a scheme that does not benefit any of the creditors.

I would hold that Damien Burns failed to establish controlling equities in his favor and that the judgment creditors hold liens superior to his lien in the order established by the trial court, and I would therefore affirm the trial court. I am authorized to state that Justice Miller concurs in this opinion.

MILLER, J., joins in this dissent.

BLISS, J. (dissenting)—I respectfully dissent from the majority opinion and also from portions of the dissenting opinion of the chief justice, although I concur in the result reached in the latter opinion, which will be referred to herein as the dissenting opinion.

The note and mortgage were executed April 16, 1925, and the note was due April 16, 1927. It was not paid, and since the bar of the statute of limitations was not suspended or extended in any way prior to April 16, 1937, it became effective against the enforcement of both the note and the mortgage on that date. On March 2, 1936, while the note and mortgage were still enforceable, Mitchell secured a judgment against the mortgagor, who has at all times pertinent owned the land. This judgment, on the date last given, became a lien upon the land, as provided by section 11602, Code of 1935, but subject to said mortgage. It continued thereafter to be a lien. When the bar of the statute,

on April 16, 1937, became effective against the note, the latter became unenforceable, and the mortgage, which was but an incident of the note, also became unenforceable. Actions to enforce either one were banned by section 11007 (6) of the Iowa Code— the general statute of limitations. In the words of the layman, they were "outlawed." When the bar of the statute became effective against the note, the lien of the mortgage upon the land terminated instantly. It ceased to exist. It is immaterial what became of it; the important fact is that it was not then a lien upon the land covered by the mortgage. The decisions of this court agree upon this. The language in each opinion may not always be the same, but there can be no fair doubt of the meaning of the language, or the thought, or intention expressed by the court. I will refer to but a few of these cases. In Clinton County v. Cox, 37 Iowa 570, 571, the court said:

"When the debt is discharged or, *by operation of law, may no longer be enforced ITS FUNCTIONS TERMINATE*, and not before. [Citing seven decisions of this court.] These principles determine the question before us, for, unless it appears that the debt is discharged, *or is, under the law, no longer capable of being enforced,* the deed of trust stands as a security for its payment." (Italics and capitals supplied.)

Can there be any reasonable question of the meaning of the capitalized words? Plainly they mean that the mortgage is no longer a lien on the land, that it no longer "stands as a security" for the payment of the note. Neither can there be any fair doubt as to the meaning of the italicized words. They clearly refer to the bar of the statute of limitations, and to no other "law," or "operation of law."

In Kerndt & Bros. v. Porterfield, 56 Iowa 412, 414, 9 N. W. 322, 323, upon which the majority opinion is largely based, the court said:

"An action to foreclose a mortgage is not barred by the statute of limitations so long as the debt remains unpaid *and capable of being enforced.* Brown v. Rockhold, 49 Iowa, 282; Clinton County v. Cox, 37 Iowa, 570. The mortgage is an incident of the debt *and follows it, and its existence as a lien is only terminated when the debt ceases to be enforceable.*"

Under section 11007(6) and under the repeated decisions of this court, the mortgage debt, on April 16, 1937, "ceased to be enforceable," and under the decision quoted and our pertinent decisions generally, the "existence of the mortgage as a lien (was) terminated."

In Fitzgerald v. Flanagan, 155 Iowa 217, 221, 222, 135 N. W. 738, 740, Ann. Cas. 1914C, 1104, which is the latest decision of this court on the particular matter which I am now discussing, the court, after stating that in those jurisdictions (citing many decisions) in which a real-estate mortgage creates an estate in the land "the mortgage security is not extinguished, although the debt be barred," continues thus:

*"But in this state,* in Arkansas, by a recent statute, in California, in Idaho, Illinois, Kentucky, Minnesota, Kansas, Mississippi (by recent statute), Missouri (by recent statute), Nevada, Texas, and in Wyoming, the mortgage, being considered a mere incident to the debt, *is, as a general rule, extinguished when the debt for which it is given is barred by the statute of limitations."* (Citing decisions of the courts in the states named. Italics supplied.)

On the page following the quotation, Justice Deemer indicates what he meant by the phrase, "as a general rule," by noting some exceptions in the other states mentioned. No one would seriously dispute that this definite and unambiguous language states and means that when the debt is barred the mortgage securing it is extinguished. If contemporaneous construction were needed, one may turn to the dissenting opinion of Justice Weaver, who thought the evidence insufficient to sustain the decree, where he states, at page 233 of 155 Iowa, page 744 of 135 N. W.:

"The contention on his [Justice Deemer's] part has been that, under the statutes and repeated decisions of this court, a mortgage in this state does no more than to evidence a lien or security for the payment of a specified debt, and that, when the right to enforce that debt is lost by the effect of the statute of limitations or otherwise, *the lien or security which is a mere incident thereto falls with it, a position so emphatically affirmed by this court that it is an uncalled for waste of time to cite the precedents."*

I will make no comment upon the attempt of the majority opinion to read a different meaning into other language in the Fitzgerald case.

At the same instant the lien of the mortgage upon the land "ceased to exist," was "terminated" and "extinguished," the lien of the Mitchell judgment superseded the lien of the mortgage in effect and priority and became the first lien upon this land. This cannot be successfully controverted.

On October 5, 1937, which was subsequent to the date when the statute of limitations became effective against the note and mortgage and at a time when the mortgage was not a lien upon the land, Eichhoff procured a judgment against the mortgagor, which upon its rendition became a statutory lien upon the land of the mortgagor. The lien of this judgment was junior and subject to the lien of the Mitchell judgment.

On March 7, 1942, approximately seventeen years after the note was given, fifteen years after it was due, four and a half years after it was outlawed, and six years after the Mitchell judgment was rendered, Doan, the holder of the note, Joe Burns, the maker, and Damien Burns, brother of Joe, got together, and, for a cash consideration of $50 paid by Damien to Doan and the promise of $100 more if the mortgage could be made effective, the note and mortgage, evidencing a face value in excess of $2,000, were assigned by Doan to Damien Burns, and Joe Burns and wife revived the note by executing a written admission of and promise to pay the indebtedness, as provided by section 11018, Code of 1939. Such a statutory provision has been in effect since the Code of 1851. It is a proper and wise provision. It is akin to the rule of procedure that the defense of the statute of limitations must always be pleaded. Certainly a debtor must be accorded the right to waive the statute or to extend or renew the life of his financial obligations. That we believe is a primary purpose of the legislation. As between the debtor and the creditor, the revivor may be made either before or after the statute of limitations has run.

The majority opinion gives priority to the mortgage over the first judgment (Mitchell), and priority to the second judgment (Eichhoff) over the mortgage, and priority to the first judgment over the second judgment. In commenting upon the

theory responsible for this conclusion, the opinion, in its fourth division, states:

"1 Black on Judgments, 2d Ed. 710, section 456, refers to it as 'an extremely interesting and peculiar question—called the "triangular question" * * *.' See, also, 31 Am. Jur. 38. Holliday v. Franklin Bank, 16 Ohio 533, 535, states: 'If it be attempted to settle the question upon the principle of superiority, it runs in a circle and produces no result'."

Without running in a circle, I readily agree with certain results reached in the majority opinion, to wit, that the Eichhoff judgment is prior to the mortgage and the Mitchell judgment is prior to the Eichhoff judgment. But I carry the syllogism to its necessary conclusion and hold that the Mitchell judgment is therefore prior to both mortgage and the Eichhoff judgment.

I concede that there is one decision of this court under which the holding in the majority opinion that the mortgage is prior to the Mitchell judgment may be sustained unless it is defeated by the "controlling equities" theory in that decision, which the chief justice insists is controlling in the determination of the appeal before us. That decision is Kerndt & Bros. v. Porterfield, supra, 56 Iowa 412, 415, 9 N. W. 322, 324. It is an unsound opinion, in my judgment. Not only because it disregarded the controlling equities, a matter with which we are not concerned, but because of the unsound rule of law on which the decision is based. In that case, Porterfield executed a note and a mortgage on his land securing the indebtedness. Before the note was barred he executed two other notes secured by a mortgage on the same land to another party. I think it may be fairly assumed that the two notes and the second mortgage were given for valuable consideration received at the time of their execution. After the statute of limitations had run against the first note and mortgage, and after he had given the second note and mortgage, and after foreclosure proceedings had been started on the same, but before decree and sheriff's deed thereunder, Porterfield executed a written promise to pay the first note and thereby revived that note and the mortgage securing it. The trial court gave priority to the second mortgage. This court reversed, and held that the new promise removed the bar of the statute as a defense to the

foreclosure of the first mortgage and the court ordered it enforced as a lien prior and superior to the second mortgage. I will quote a part of the reasoning given in support of this court's conclusion, to-wit:

"When his [the second mortgagee's] interest was acquired, he took it subject to the [first] mortgage, with the knowledge that the debt could be revived by a new promise and the mortgage lien would stand as long as the debt existed. When the mortgage is foreclosed under a new promise removing the bar of the statute, he is in no different condition than he was in when he acquired his interest. If he was satisfied to acquire his interest while it was subject to the mortgage, he ought to be content to hold it in that condition. He can urge no equity which will relieve his property from the lien of the mortgage. Waterson v. Kirkwood, 17 Kan., 9; Schumaker [Schmucker] v. Sibert, 18 Kan., 104. * * * It seems that a different rule is recognized in California. See Wood v. Goodfellow, 43 Cal., 185."

It is true that the second mortgagee took his mortgage subject to the first mortgage, and he knew that the life of the first note and the lien of the first mortgage might be prolonged by a revivor before the bar of the statute of limitations became effective. In such event the lien of the first mortgage would not be suspended, and the second mortgage would remain a second mortgage during the prolonged period. This never happened. He also knew when he took his notes and mortgage that the first mortgagee might not press his claim during the limitation period, either from choice or from lack of diligence, in which event the lien of the first mortgage would be extinguished and his mortgage would supersede it as a first lien. This is just what did happen. When he took his notes and second mortgage he took them subject to whatever advantages or disadvantages might accrue to him. He was entitled to the advantages which did accrue to him through the carelessness or indifference of the first mortgagee. The opinion in the Kerndt case states that "he can urge no equity." Was it not an equity and a benefit to him that his mortgage was advanced from a second to a first lien? When the statute had run against the first note and mortgage, the second mortgagee was in a more advantageous position than he was when he re-

ceived his notes and mortgage. The decision deprived him of that advantage. The fact that he did nothing to bring about his improved position is not a sound reason for depriving him of that advantage. Neither is there merit in the expressed reason of the court that the second mortgagee was in no worse condition than when he first took his mortgage. One is ordinarily entitled to any advantage which rightfully comes to him in the course of events, or ''the march of time.''

I wish at this point to speak of a matter on which Justice Oliver and I are in accord, that is, that a junior judgment lienholder may plead the bar of the statute of limitations against a prior secured debt. The chief justice disagrees with us and comments on the matter in his dissent. What I say on that point is therefore directed to that part of the dissenting opinion.

In the Kerndt case there was no question raised that the second mortgagee could not plead the bar of the statute against the first mortgage. He undoubtedly had that right. He had a lien upon the property covered by the first mortgage and a definite interest therein. As said in 17 R. C. L. 963, section 331:

''Broadly speaking any person who claims title to, or interest in, any real estate may invoke the aid of the statute of limitations as against a claimant whose claim is prior in time to the person invoking the aid of the statute, where the prior claim has been barred by the statute of limitations.''

In 37 C. J. 707, 710, section 27, the author states:

''In a suit to foreclose a mortgage the statute of limitations may be invoked by any person who has an interest in the real estate sought to be foreclosed.''

Numerous decisions support the principle as stated above. Subsequent grantees and mortgagees, holders of tax titles, and junior lienholders of all kinds, may invoke the defense. A judgment creditor, having a general lien upon the property of the mortgagor, may plead the statute against the cause of action of a prior mortgagee on a note and mortgage. Buss v. Kemp Lbr. Co., 23 N. M. 567, 170 P. 54, L. R. A. 1918C, 1015.

In Davis v. Bartz, 65 Wash. 395, 398, 118 P. 334, 335, the court said:

"It follows of necessity that any one interested, whether as owner, mortgagee, lien claimant, or otherwise; any one who may defend against the lien, or show by competent evidence that it is not a lien as against his interest, has the right to invoke the statute if the action is not commenced as against him within the statutory period."

It is often said that the right to plead the statute of limitations is a personal privilege of the debtor, but it has been many times held that others may also plead the defense when it is necessary to protect property rights. After a review of the cases, the court, in Brandenstein v. Johnson, 140 Cal. 29, 32, 73 P. 744, 745, said:

"The theory of all the cases above cited is, that while the general rule is, that the plea of the statute of limitations is a personal privilege, that rule does not extend to subsequent property rights over which he has no control."

Other decisions, and authorities from many more, which could be cited, are Graves v. Seifried, 31 Utah 203, 87 P. 674; Stryker v. Rasch, 57 Wyo. 34, 112 P. 2d 570, 576, 113 P. 2d 963, 136 A. L. R. 770; Kiel v. Staber, Tex. Civ. App., 116 S. W. 2d 809.

It is sometimes asserted that only one in privity with the debtor may set up the defense of the statute. The courts are becoming quite liberal in broadening the meaning of the term "privity," and extending the relationships within its scope. In Stryker v. Rasch, supra (opinion on petition for rehearing, 113 P. 2d 963), the court held that an adverse possessor of mortgaged premises might plead the statute of limitations, as against the contention that the bar of the statute might only be raised by one in privity with the mortgagor. In Buss v. Kemp Lumber Co., supra, 23 N. M. 567, 572, 170 P. 54, 55, L. R. A. 1918C, 1015, the court said:

"A majority of the cases sustain the view that a judgment creditor, in cases like those at bar, is in privity of estate with the mortgagor, his judgment debtor, and that he may plead the statute of limitations. In such cases it would seem on principle that no distinction can be made between the right of a judgment creditor to plead the statute and the right of a junior mortgagee."

In Lord v. Morris, 18 Cal. 482, 491, speaking on the matter of the personal privilege, the court said:

"But with respect to property placed by him [the debtor] beyond his control, or subjected by him to liens, he has no such personal privilege. He cannot at his pleasure affect the interests of other parties. His grantees or mortgagees, with respect to the property, stand in his shoes, and can set up any defense that he might himself have set up to the action, either to defeat a recovery of the property or its sale."

See, also, Brandenstein v. Johnson, supra, 140 Cal. 29, 73 P. 744, and DeVoe v. Rundle, 33 Wash. 604, 74 P. 836, in each of which a junior judgment lienholder was permitted to plead the bar of the statute against the enforcement of what had been a superior lien. Other cases in point are Foster v. Butler, 164 Cal. 623, 130 P. 6; Paramount Securities Co. v. Daze, 128 Cal. App. 515, 17 P. 2d 1049; Fakes v. Vilven, Tex. Civ. App., 119 S. W. 2d 895; Flack v. Boland, 11 Cal. 2d 103, 77 P. 2d 1090.

While it is a well-recognized principle that limitation statutes generally pertain to the remedy only, and are therefore subject to legislative control, yet, when the limitation has once become fixed and effective, the great weight of authority supports the sound principle that its acquisition is an absolute right, and a vested asset, which not even the legislature can take from its possessor.

While no one has a vested right in the continuation of any statute of limitation with respect to any past or future demands against him, which would prevent its legislative modification or repeal so long as the statutory period has not already elapsed against any of these demands, yet the authorities and decisions are in practically complete accord that, if the statute has completely run and barred the action against a person on a particular debt, he has a vested right to rely on that statute as a defense of which he cannot be deprived against his will. For an instructive opinion on the question, see Board of Education v. Blodgett, 155 Ill. 441, 447, 40 N. E. 1025, 1027, 31 L. R. A. 70, 46 Am. St. Rep. 348, wherein the court said:

"In almost all of the States of the Union in which the question has arisen, it has been held that the right to set up the bar

of a statute of limitations as a defense to a cause of action, after the statute has run, is a vested right, and cannot be taken away by legislation, either by a repeal of the statute without saving clause or by an affirmative act, and that it is immaterial whether the action is for the recovery of real or personal property, or for the recovery of a money demand, or for the recovery of damages for a tort." (Citing many authorities.)

See, also, Cathey v. Weaver, 111 Tex. 515, 242 S. W. 447; Moore v. State, 43 N. J. Law 203, 39 Am. Rep. 558; Kiel v. Staber, supra, Tex. Civ. App., 116 S. W. 2d 809, 811; Town of Bradford v. Brooks, 2 Aikens (Vt.) 284, 16 Am. Dec. 715; 17 R. C. L. 674; Thompson v. Read, 41 Iowa 48; 34 Am. Jur. 23, section 13; id. 37, section 33.

In the Kerndt case, supra, this court deprived the second mortgagee of a vested right which had accrued to him by reason of the bar of the statute of limitations against the enforcement of the first note and the consequent removal of the first mortgage as a prior lien.

In the opinion in that case the court cited two Kansas decisions in support of its holding, and a California decision which it said was apparently to the contrary. The first case cited, Waterson v. Kirkwood, 17 Kan. 9, has but slight, if any, application to the point involved. In that case the court held that the resident grantees of the former owner-debtor could not plead the bar of the statute against the owner's debt and mortgage on their land, because the statute was tolled against the debtor by reason of his absence from the state. This decision is contrary to the California case cited and to the great weight of authority. The second case cited, *Shumaker* v. Sibert, 18 Kan. 104, 111, 26 Am. Rep. 765, 769 (the title is *Schmucker* v. Sibert), in my opinion is more against the decision in the Kerndt case than for it. It holds that the revivor of a note barred by the statute of limitations will revive a mortgage executed to secure it, so far as the interest of the mortgagor in the premises but not as to a grantee of the mortgagor receiving deed previous to such revivor. The court said:

" * * * When the note is barred, the mortgage is also barred, and no subsequent payment, promise, or acknowledg-

ment can revive the mortgage as to property which the mortgagor has prior thereto conveyed to a third party. Whenever the mortgage is barred, the property is free from the lien. It is, as respects the mortgage, as though the latter had never existed. If therefore the mortgagor no longer owns the property, he cannot impose a burden upon it—his power to bind the property has ceased. He is as powerless over it as though he had never owned it. He can revive the note, as he could give a new note, for no rights but his own are involved. *He can revive the old mortgage just so far and so far only as he could give a new mortgage, and that is, to bind his own property.* Day v. Baldwin, 34 Iowa, 380.'' (Italics supplied.)

The decision is sound law and has the support of reason and good common sense, as all sound law has. This comment is repeated in Richards v. Baker, 186 Okla. 533, 99 P. 2d 118, 119.

The majority opinion cites cases of this court holding that a mortgage does not convey any estate in the land. No one is making a contrary contention. A real-estate mortgage is but a specific lien, a security. It is also an encumbrance. It evidences a parting or setting aside of a portion of the value of the land as security for a debt and which may be taken to pay that debt. It is a reduction of the owner's equity in the land and a pledge of it to another. It is placing a valuable interest in the land in another. A mortgage, in fact and effect, is a pro tanto sale. But whether it be a sale or a mortgage, a deed or a trust deed, the interest which is parted with by sale or by mortgage cannot be affected by a revivor of the debt by the owner-mortgagor after the sale or mortgage is made, and after the debt has been barred by the statute of limitations. The revivor can affect only the equity or interest retained by the debtor. It cannot affect or displace the priority of the lien which attached when the bar became effective and prior to the subsequent revivor. To do so would be a reduction in the value of the junior mortgagee's security. It is, of course, the privilege of the debtor to, at any time, revive the debt against himself, and to revive the lien of the mortgage against any interest in the land which he retains, at any time within the twenty-year life of the mortgage; but it is an unjust and an unsound rule of

law which permits the debtor, by such revivor, to impair or destroy any interest, security, value, or equity which he has transferred to another. I know of no decision to the contrary where the debtor has conveyed the land, or his equity of redemption therein, by deed—that is, where he has parted with all interest in the land. What I contend for is that there is no difference in principle, and should be no difference in law, between such a transaction and a mortgage—between a straight deed and a trust deed, or a deed with a defeasance clause. In the Kerndt case the junior lien was by a mortgage. In the case before us the junior liens were effected by judgments. But there is no difference with reference to the point in issue. In either event the lien is brought about by the conduct of the debtor. If he had confessed the judgments, the liens would have been created by his direct action, but when he contracts debts which result in judgments, the liens thereof are just as certainly created by him, though, perhaps, more indirectly. The fact, as the authorities cited herein show, that persons interested in the real estate in any way—grantees, mortgagees, lessees, holders of tax titles, judgment lienholders, and junior lienholders of all kinds —may plead the statute of limitations as a defense, is quite significant, and is definite proof that the same principle applies to all, and that whatever interest any of them may have is protected against such a revivor as we have in this case.

I make no contention that Mitchell would have any right to plead the statute had the revivor taken place before the bar of the statute became effective, nor do I contend that Eichhoff would have any case if he had obtained his judgment after the revivor—the reason, as applied to the first instance, being that the lien of the mortgage would never have been removed or extinguished, and the Mitchell lien would never have advanced in seniority, and in the second instance, the mortgage lien would have been restored before the Eichhoff judgment was rendered. As to liens attaching after the expiration of the statutory limit, the test is, Was it before or after the revivor? If before, the lien takes precedence; if after, the restored mortgage lien takes precedence. Authority for these statements is found in decisions and authorities cited or relied upon in the majority opinion.

In Clark v. Grant, 26 Okla. 398, 400, 109 P. 234, 28 L. R. A., N. S., 519, Ann. Cas. 1912B, 505, the prior mortgage lien became barred by the expiration of the statutory limit, and thereafter it was revived. After the revivor the judgment liens attached. The court held that the restored mortgage lien took precedence. I subscribe fully to such a rule. But that is not what happened in this case. Here, both of the judgments were in existence and had attached before the revivor. The holding in the Clark case sustains both the Mitchell and the Eichhoff judgments. That court said:

"As the mortgage is a mere incident to the note, subsequent revivor thereof by part payment after it is barred revives not only the note but also the mortgage, and that, too, as against judgment lienors, such as plaintiffs in error, *whose liens did not attach to the mortgaged property until after said payment and consequent revivor.*"

But immediately following in the Oklahoma opinion is this significant sentence:

"*It is only such as have an interest in the mortgaged property acquired prior to the revivor whose rights thereby remain unaffected.* Childs v. Thompson, 81 Mo. 337; Courtner v. Etheredge et al., 149 Ala. 78, 43 South. 368; Schmucker v. Sibert, 18 Kan. 104, 26 Am. Rep. 765; Hubbard et al. v. Mo. Val., etc., Ins. Co., 25 Kan. 179; Capital Co. v. Merriam, supra, [60 Kan. 397, 56 P. 757]." (Italics supplied.)

Had the judgment liens in the Oklahoma case been acquired prior to the revivor, as are the judgment liens in this case, that court would have sustained them.

The majority opinion quotes at length from Consolidated National Bank v. Van Slyke, 27 Ariz. 501, 508, 234 P. 553, 555, 38 A. L. R. 825, relative to the irreconcilable conflict between the equitable principle which I contend is the sounder and the equitable principle urged in the majority opinion and the dissent of the chief justice. The majority opinion terms the latter principle the "majority rule," but I do not find it so designated by any authority in that opinion. However, when the Arizona court decided the case it resolved its doubts in favor of the second

rule, for two reasons, one being that, while the statute of limitations is a legitimate defense, it is not one of right but of repose and not to be extended beyond its plain terms; "and, second, because in our opinion the waiver of the statute of limitations in favor of a prior lien, *made before the statute has run,* does not impose an inequitable burden on a junior lienholder who acquired his lien, with that prior lien, to his knowledge, actual or constructive, still enforceable." (Italics supplied.)

I have no quarrel with such a position. I have already stated that had the revivor taken place before the statute had run against the Burns note Mitchell would have no case, simply because in such event the lien of the Burns mortgage would never have been lost. Its life would have been prolonged before it was ended, and the Mitchell judgment would have remained a second lien. But that is not what happened. The Van Slyke case, on its facts, is not applicable to this one, but it is not unreasonable to assume that if the revivor had been after the bar of the statute, instead of before, as it was, the court would have decided that such revivor would have placed "an inequitable burden" on the junior lienholder.

The majority opinion quotes at length a discussion of the "two distinct and opposing lines of authority" in Smith v. Bush, supra, 173 Okla. 172, 175, 44 P. 2d 921, 923. But the situation in that case is identical with that in the Van Slyke case, supra. The lien of the mortgage was never lost by lapse of time. The note was renewed in writing before the expiration of the statute and was kept alive by payments until the suit was brought. The court, in its decision, said:

"We accordingly hold in this case that the statute of limitation is not available to the defendants herein [they held leases for oil, gas, etc.] *for the reason that within five years previous to the commencement of this action, interest payments have been made by the mortgagors,* who are the debtors on the note secured by the mortgage and who still own an interest in the mortgaged premises."

There is nothing in the decision in Smith v. Bush, supra, indicating in any way a departure from the sound principle

announced in Clark v. Grant, supra, at page 400 of 26 Okla., page 234 of 109 P., to wit:

"It is only such as have an interest in the mortgaged property *acquired prior to the revivor* whose rights thereby remain unaffected." (Italics ours.)

The majority opinion states:

"It will be noted that the reasons given in Smith v. Bush and the Van Slyke case, supra, as the basis for the majority rule, are substantially the same as those stated in the Kerndt case. True, the cited cases in general refer to revivors prior to the statutory bar. But the principle that a junior lienholder, with actual or constructive notice of a valid and enforceable prior lien, takes his lien subject to the extension or revival of such prior lien, should be equally applicable whether the revivor is before or after the expiration of the statute of limitations."

Respecting the first sentence in the quotation, I have to say that I have set out the exact reasons the court gave in each case and they have no similarity to those stated in the Kerndt case. As to the second sentence, it is true that the cases cited in general refer to revivors prior to the statutory bar. In such cases there is, of course, no removal of the lien of the prior mortgage. The decisions in such cases have no applicability to cases like the one at bar. In fact, the principle for which the majority opinion contends, by a reasonable construction of its language, is applicable only when the extension of the time of payment, or the tolling of the statute, takes place before the expiration of the statutory bar. No complaint could fairly be made of such a principle. It is the exact construction which was placed upon it in the Smith and Van Slyke cases. Furthermore, if he is to be charged with disadvantages of having the statute tolled, why should he not be entitled to advantages accruing when the bar of the statute becomes complete? Decisions like the Smith and Van Slyke cases, supra, are like our decisions in Gilman v. Heitman, 137 Iowa 336, 113 N. W. 932, and First National Bank v. Woodman, 93 Iowa 668, 62 N. W. 28, 30, 57 Am. St. Rep. 287. In all of them the revivor was before the bar. But none of them is authority for the decision

in the Kerndt case. There is no other decision in Iowa like it. What was said about it in Gilman v. Heitman and Bank v. Woodman was not necessary to the decisions. That it is contrary to principle and to precedent, in the opinion of the annotator, fairly appears, in my judgment, from his comment on the case in 101 A. L. R. 346. See an instructive annotation commencing on page 337 in said volume respecting tolling of the statute of limitations as affecting conveyances subsequent to the mortgage. The majority opinion cites and quotes from some Texas decisions which are not of any material support to the opinion, as I read them.

I can see no good reason for the distinction which that opinion makes between the Mitchell and the Eichhoff judgments. The opinion states of the Mitchell judgment:

"In the case at bar the rights of the junior lienholder never vested. The right to enforce the mortgage *was simply suspended* subject to revivor. When the Mitchell lien attached, Mitchell *was bound to know and consider that,* under the law then in effect, *the mortgage might thereafter be revived, and that this revivor might be before or after the statutory period.* First National Bank v. Woodman, supra. In other words, Mitchell took his lien subject to the right to revive the mortgage. The enforcement of this right of revivor will take away from Mitchell no vested rights and he has no ground for complaint." (Italics supplied.)

I submit that if the above statements are true as to the Mitchell judgment, they are true as to the Eichhoff judgment, and that the statements would be just as proper if the name "Eichhoff" were substituted in each place where the name "Mitchell" appears. Continuing, the opinion states:

"The status of the Eichhoff judgment differs from that of the Mitchell judgment in that the Eichhoff judgment was secured after the remedy upon debt and mortgage *was barred* and before the revivor." (Italics supplied.)

What solid reason is there for saying that the right to enforce the note and mortgage "was simply suspended" as to the Mitchell judgment but was "barred" as to the Eichhoff judg-

ment? After the expiration of the statutory limit on April 16, 1937, the lien of the mortgage was either "suspended" as to both judgments or it was "barred" as to both. It is a case of either fish or fowl. It cannot be both. The lien of the mortgage, under our decisions, was extinguished as to both judgments. Continuing, the opinion also states:

"Since there was no enforceable mortgage when the Eichhoff lien attached, he was not bound to anticipate that the mortgage might thereafter be revived. *To give the subsequently revived mortgage priority over the Eichhoff judgment lien, in effect would amount to casting upon Eichhoff an additional burden not within his contemplation at the time his judgment lien attached.* While the line of demarcation between the status of the Mitchell and Eichhoff liens is not broad, we think it is distinct." (Italics supplied.)

The line is not broad, certainly, and neither is it distinct. And there is very little protein in any argument which seeks to sustain the distinction. Respecting Mitchell, the opinion states that he was *"bound to know and consider that * * * the mortgage might thereafter be revived, and that this revivor might be before or after the statutory period."* This is the obiter dictum of First National Bank v. Woodman, supra. But of Eichhoff, the opinion states that, *"he was not bound to anticipate that the mortgage might thereafter be revived."* Just why should there be a difference between what Mitchell and what Eichhoff should anticipate? Why should Mitchell be required "to know and consider" that there might be a revivor after the bar was complete, and Eichhoff need not even "anticipate" such a thing? If Mitchell was bound by such a happening, why was not Eichhoff? Eichhoff got his judgment on October 5, 1937, and Joe Burns had until April 16, 1947, to revive the mortgage. Assuredly, the fact must be that neither was required to give any consideration to any revivor after the bar of the statute and after their liens had attached, because it could not disturb liens which were in effect in the interim during which the lien of the mortgage had "ceased to exist."

Now, take note of this statement:

*"To give the subsequently revived mortgage priority over*

*the Eichhoff judgment lien, in effect would amount to casting upon Eichhoff an additional burden not within his contemplation at the time his judgment lien attached."*

I am reminded of those old saws about "blowing hot and cold," and "what is sauce for the goose is sauce for the gander." Turning to the majority opinion, we find a statement of the two conflicting principles, to wit:

" 'The first principle may be stated thus: "A junior lien-holder, when he acquires his lien, is entitled to assume the rights outstanding against him at the time will not be increased or en-larged without his consent, and a subsequent waiver of the statute of limitations as to the senior lien constitutes such en-largement." * * * The other principle is: "If a junior lien-holder had notice, actual or constructive, of a valid and en-forceable prior lien, at the time he acquired his rights, he took the latter subject to a possible extension of the time of payment, and cannot complain thereof, as it is only an incident of the lien." ' "

The majority opinion insists that the second principle is the correct one. It uses the *second* principle to give precedence to the restored mortgage lien over the Mitchell judgment, and, as shown by the last-above italicized quotation, it uses the *first* principle, which it insists is the incorrect one, to give precedence to the Eichhoff judgment over the restored mortgage lien. Verily, the "triangular question" is not only "extremely in-teresting and peculiar," but its ways are as devious as Bret Harte's "heathen Chinee." The fact is that the "first prin-ciple" is applicable to both judgments, since the revivor en-larges the rights against both judgment lienholders.

It is my opinion that the priority of the judgments should be determined by priority of attachment, which is the general rule. This gives priority to the Mitchell judgment. Both of them are prior and senior to the mortgage, since both were ex-isting liens against the land after the bar of the statute against the mortgage and prior to its revivor. I would overrule the principle of law announced in Kerndt & Bros. v. Porterfield, supra, 56 Iowa 412, 9 N. W. 322, and affirm the decree of the

able trial court, by giving priority to the Mitchell judgment, and subject and junior thereto, in order, the Eichhoff judgment and the Burns mortgage.

I am a believer in the rule of stare decisis but I do not bow down in idolatry at its shrine, particularly when I believe the decision to be unsound and when it is vulnerable to a construction that will probably effect repeated injustices in the future. Principles of law affecting title to real estate, or the priority of liens thereon, should be plain and definite. The status and priority of these various liens or encumbrances should be clearly evident at any particular time. The owner-debtor should not be permitted to keep junior lienholders, and the public generally, in ignorance and doubt as to the status and value of these liens for many years after the statute of limitations has run against a lien prior in point of time, by holding in reserve the threat of a revivor. Such a rule lends itself most readily to a fraud upon creditors. A debtor might give a spurious mortgage to a confidant and carry it along on the records as an apparently valid lien for a period up to twenty years from its date, ready with a revivor to defeat any judgment or mortgage liens which attached prior to the expiration of the statute of limitations.

Both law and equity serve the vigilant and not those who sleep upon their rights. Neither do they favor the enforcement of stale claims.

The "controlling equities" rule mentioned in the opinion in the Kerndt case as an escape from the evils which I mention does not effectually prevent these evils. It does not remove the uncertainty and doubt respecting the priority of liens. A controlling equity may mean many things and no one may be certain until a court passes upon the matter.

I respectfully dissent from the majority opinion of Justice Oliver, and concur in the result of Chief Justice Mulroney's dissenting opinion. I would affirm.

MANTZ, J., joins in this dissent.