F. ROBERT AND M. JEANNE WOODWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woodward v. Commissioner
Docket No. 1679-75.
United States Tax Court
T.C. Memo 1978-163; 1978 Tax Ct. Memo LEXIS 351; 37 T.C.M. (CCH) 715; T.C.M. (RIA) 780163; May 1, 1978, Filed; As Amended June 2, 1978 Don Cooney, for the petitioners. Ronald M. Frykberg, *352 for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1966
$ 10,823.12
1967
7,144.20
1968
8,175.14
1969
7,796.21
1970
11,760.79
1971
10,719.35
1972
6,092.89
Because of concessions, the sole issue for decision is the fair market value of certain notes (with accrued interest) donated by petitioners to a charitable organization. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, F. Robert Woodward ("Robert") and M. Jeanne Woodward ("Jeanne"), husband and wife, resided in Dubuque, Iowa, at the time they filed their petition herein. In 1965 and in each of the years in issue, petitioners gave various promissory notes to the Telegraph-Herald Foundation, Inc.[1] ("Foundation"). The notes were issued during the period 1940 to 1954. *353 On December 26, 1939, F. W. Woodward (Robert's father) created an irrevocable inter vivos trust ("trust")for the benefit of his wife, Elsie M. Woodward (Robert's mother). Under the terms of the trust, Elsie M. Woodward was to receive $300 per month during F. W. Woodward's life. The original trust corpus consisted of 200 shares of common stock in Telegraph-Herald, Inc. On January 23, 1940, F. W. Woodward transferred five life insurance policies on his life to the trust. In order to pay the premiums on the five life insurance policies, the trust borrowed money from Robert's mother and father and from petitioners. These loans were evidenced by promissory notes payable on demand with interest at the rate of four percent per annum. In addition, the trust in 1942 gave to Robert's mother a promissory note in the amount of her annuity for that year and in 1947 gave her a promissory note in the amount of the interest due on the other notes. On March 16, 1953, Elsie M. Woodward made a gift of 15 of these trust notes to Robert. The following day those 15 notes and 3 issued to Robert and 1 issued to Jeanne were renewed through the issuance of new notes by the trust which were payable *354 on March 17, 1958, and bore interest at the rate of four percent per annum. On March 17, 1958, these 19 notes and two subsequent notes (one issued to Robert and the other issued to Jeanne) were renewed through the issuance of new notes by the trust payable on March 17, 1963, with interest at the rate of four percent per annu7, payable from and after December 20, 1947. Any interest or principal not paid when due was to bear interest at the rate of seven percent. On December 17, 1965, Robert assigned 3 of the notes to the Foundation. During 1966 through 1969, Robert and Jeanne assigned the following trust notes to the Foundation: Year
Assignor
Note No.
Principal
Accrued Interest
1966
Robert
58-A
$1,050.25
$1,116.38
Robert
65
7,000.00
7,440.27
1967
Robert
60-A
3,000.00
3,486.17
Robert
62
3,000.00
3,486.17 1968
Robert
59-A
1,765.34
2,432.87
Robert
67
3,000.00
4,123.49
Robert
69
1,440.62
1,986.35
1969
Robert
72
2,500.00
3,053.06
Robert
76
1,800.00
1,885.53
Jeanne
78
2,000.00
2,685.03
On December 17, 1970, the promissory notes owned by Robert, Jeanne and the Foundation were renewed through the *355 issuance of new notes by the trust payable on demand with an interest rate of 7 1/2 percent per annum. Thereafter, during 1970 and 1971, Robert and Jeanne assigned the following trust notes to the Foundation: Year
Assignor
Note N0.
Principal
Accrued Interest
1970
Robert
61-X
$3,600
0
Robert
64-X
3,600
0
Robert
74-X
3,300
0
Robert
75-X
3,350
0
1971
Robert
63-X
3,000
0
Robert
68-X
3,000
0
Robert
73-X
3,000
0
Jeanne
79-X
1,500
0
Beginning in 1970, the trust began making quarterly payments to the Foundation in retirement of the notes. Each payment was approximately $6,000. The payments were made pursuant to a "payment plan" adopted by the trustees of the Foundation and ratified by the trust. By early 1975, all the outstanding notes of the trust were retired. On their 1966, 1967, 1968 and 1969 income tax returns, petitioners claimed a deduction for charitable contributions in the face amount of the notes, plus the accrued interest. On their 1970 and 1971 income tax returns, petitioners claimed a charitable deduction in the amount of principal due on the notes. Respondent in his statutory notice disallowed *356 the claimed deductions in their entirety because petitioners had failed to establish that the notes had any value at the time they were transferred to the Foundation. Respondent also determined that in 1970, 1971 and 1972, petitioners realized income in the amount of the interest which had accrued prior to the transfer of the notes to the Foundation and which had been paid while in the hands of the Foundation. [2]
The notes had a fair market value equal to their face amount plus accrued interest when given.
OPINION The sole issue in this case is what was the fair market value of certain notes on the date those notes were transferred by petitioners to the Telegraph-Herald Foundation, Inc. ("Foundation"). Petitioners contend that the notes transferred during 1966 through 1969 had a fair market value equal to the principal amount of the notes plus the accrued interest. They also contend that the notes transferred during 1970 and 1971 had a fair market value equal to the principal amount of the notes. *357 Respondent, on the other hand, asserts that petitioners have failed to establish that the notes had any value at the dates of transfer. Section 170(a)(1) [3] provides generally that there shall be allowed as a deduction"any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year." Section 170(c) defines the term "charitable contribution" as a contribution to or for the use of certain specified types of entities. Section 1.170-1(c)(1), Income Tax Regs., provides that when property other than money is contributed to a charitable organization: the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. The parties agree that the Foundation is an exempt organization and contributions to it constitute deductible charitable contributions.
*358 Determination of the fair market value of the notes which constitute the charitable contributions made during each year is a factual question and must be resolved from a consideration and weighing of all the relevant evidence in the record. Mauldin v. Commissioner,60 T.C. 749, 759 (1973). Three witnesses testified on petitioners' behalf as to the fair market value of the notes. Each witness concluded that the notes had a fair market value equal to their face value plus accrued interest. In so concluding, the witnesses took into account the ability of the obligor (the trust) to repay the loans as well as the general reputation and character of the obligor. Respondent, however, argues that these witnesses erred in reaching their conclusions. Respondent contends that they erroneously failed to consider the fact that 8 of the 15 notes transferred in 1953 by Elsie M. Woodward to her son Robert were assertedly uncollectible in 1953 by reason of Iowa's statute of limitations. See Iowa Code Ann. sec. 614.1-5 (West Supp. 1977) and Stebens v. Wilkinson,249 Ia. 365, 87 N.W.2d 16 (1957). Respondent further argues that the three *359 witnesses erred in failing to give consideration to the fact that a buyer during 1966 through 1970 of notes with a March 17, 1963, due date would not qualify as a holder in due course. See Iowa Code Ann. secs. 554.3302 and 554.3304(3)(a) (West 1967).
We are of the opinion that petitioners' witnesses properly disregarded these factors in reaching their conclusion as to the fair market value of the transferred notes. Contrary to respondent's assertion, the 10 year Iowa statute of limitations would not have barred collection of any of the 15 notes Elsie M. Woodward transferred to Robert. Under Iowa law the reissuance of the notes in 1953 and again in 1958 (payable in 1963) revived any cause of action for collection of the notes and the statute of limitations did not begin to run until after the payment date in 1963. Burns v. Burns,233 Ia. 1092, 11 N.W. 2d 461 (1943). None of the notes were barred, therefore, when they were given to the Foundation.As to respondent's second contention, the fact that an assignee of the notes would not qualify as a holder in due course is immaterial in the instant case. [4] The critical facts are that members *360 of the Woodward family made loans to their faily trust. These loans were evidenced by notes. Several years later the notes, all of them being fully enforceable and collectible, were assigned to a charitable organization which was organized by the Woodward family. Thereafter the notes were renewed. At the time of the assignment the obligor (the trust) of the notes had the capacity to pay the principal and interest due on the notes and in fact thereafter did pay such principal and interest. In view of these facts, we conclude that the possibility that the Foundation, or any other holder of the notes, would have encountered difficulties in collecting the notes by reason of its lack of standing as a holder in due course was so remote as to have no effect on the value of the notes. *361 Therefore, taking into consideration all the relevant evidence we conclude that the fair market value of the notes given to the Foundation during 1966 through 1969 was equal to their face value plus accrued interest.Further, we conclude that the fair market value of the notes given to the Foundation during 1970 and 1971 was the principal amount of those notes. Decision will be entered pursuant to Rule 155. Footnotes
1. The Telegraph-Herald Foundation, Inc. was an organization tax-exempt under Internal Revenue Code sec. 501(c)(3)↩ during all relevant years. It was organized in 1956 by members of the Woodward family.
2. Following the trial in this case, respondent conceded that this determination was in error.The opinion herein should not be construed as expressing any views on this issue.↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
4. Qualification as a holder in due course affects only the claims and defenses to which the assignee is subject, not the underlying obligation.See Iowa Code Ann. sec. 554.3305 (West 1967). See also Iowa Code Ann. sec. 554.3301↩ (West 1967). Respondent points to no defense the obligor could have asserted, other than the statute of limitations (which we have held above was not a bar to collection).